ANNIE E. WEBSTER

*v.*

JOHN YORTY.

*Opinion filed February 21, 1902.*

1. WILLS—*will need not be both signed and acknowledged in witnesses' presence.* Proof of either signing or acknowledging the will in the presence of the witnesses is sufficient, and it is error to require the proponent to make proof of both signing and acknowledging.

2. SAME—*proponent not limited to subscribing witnesses on appeal to circuit court.* On appeal from the refusal of the county court to admit a will to probate the proponent may support his case by any evidence competent to establish a will in chancery, and he is not limited to nor bound by the testimony of subscribing witnesses.

3. SAME—*identity of will need not be established by a subscribing witness.* If the latter part of a will appears to have been cut off and re-attached at the same place by pasting a slip of paper on the back, it is error to require the proponent, by instruction, to identify the will by the testimony of at least one subscribing witness, since such witnesses are no more qualified than other persons to testify as to anything happening to the will after attestation.

4. SAME—*law does not raise any presumption on the subject of a mutilated will.* Whether there is sufficient evidence of the execution of a will and its identity to allow it to go to the jury is a question for the court; but if the will is properly admitted to the jury the law does not raise any presumption as to the condition of the instrument when it was executed, or whether there has been a subsequent change therein.

5. SAME—*when instruction on subject of mutilated will is erroneous.* If the due execution of a will has been proven, the fact that part of the will appears to have been cut off and re-attached in the same place does not justify an instruction that the proponent "assumes the burden of accounting for the mutilation by showing such circumstances as prove, by a preponderance of the testimony, that notwithstanding the changed condition of the paper it is still the will of the maker."

6. SAME—*when instruction on subject of proof of volition is erroneous.* Where the evidence establishes, without contradiction, that the testatrix understood her will and intended to make it exactly as she did, it is error to instruct the jury that the fact that a will has been procured to be written by a person largely benefited by it requires stricter proof of volition than in other cases, and that such proof should be such as to *satisfy* the jury, by a preponderance of the evidence, that the testatrix was not imposed upon.

7. SAME—*reasonableness of will is not a question for the jury.* A person of testamentary capacity has a lawful right to dispose of his property as he may choose, and if undue influence is not proved, it makes no difference, as to the validity of the will, whether it is fair and reasonable or not.

8. SAME—*burden of proving undue influence is upon the contestant.* A proponent has the burden of proving the due execution of a will and that the testatrix was of sound mind, but if undue influence is alleged, the burden is upon the contestant on that question.

APPEAL from the Circuit Court of Lee county; the Hon. JAMES SHAW, Judge, presiding.

A. F. WINGERT, for appellant.

A. C. BARDWELL, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An instrument in writing dated October 28, 1899, purporting to be the last will and testament of Barbara E. Leach, deceased, disposing of real and personal property, was presented to the county court of Lee county, and at a hearing of the petition for the probate thereof it was denied. Appellant, one of the legatees, prayed an appeal to the circuit court, where appellee contested the probate of the instrument, and a jury trial resulted in a verdict that it was not the will of said Barbara E. Leach. The court entered judgment in accordance with the verdict and against appellant for the costs of the proceeding.

At the trial the proponent proved by the testimony of the three subscribing witnesses, William Lesslie, Friend O. Smith and Fred C. Beach, that the testatrix signed the will in their presence, told them it was her will and

asked them to sign it as witnesses, and that they attested it by signing as such witnesses in her presence, and that they believed her to be of sound mind and memory at the time she executed the same. The will was thereupon admitted in evidence by the court. There was no contradictory evidence as to the execution and attestation of the will. It was also established, without dispute, that the will was the same one executed by the testatrix, and that she had testamentary capacity to make a will and dispose of her property as she saw fit.

The defense seems to have been upon two grounds: First, that there had been a mutilation of the will; and second, that its execution was procured by undue influence of Charles E. Hicks, the chief beneficiary under it. It appeared that the lower half of the last typewritten sheet of the will, containing the signature of the testatrix and the attesting clause, with the signatures of the three subscribing witnesses, had been cut off and re-attached at the same place by pasting a narrow strip of paper to the back of the will along the line of the incision. The will had been kept by the testatrix in her box at the bank where she did business, at Ashton, in Lee county, where she lived, and no one had access to the box but she. After her death the banker enclosed it in a sealed envelope and delivered it to the American Express Company at Ashton, to be sent to the clerk of the county court at Dixon. The express package was taken from the safe by some one while in the possession of the express company at Ashton, and opened. The package was returned, the seals having been taken off and others substituted. There was no evidence that Hicks was in any way connected with that act and nothing to indicate what the object of it was. It is conceded by counsel that the purpose with which it was done is matter of mere speculation, but there was no evidence tending to prove that the cutting off of that part of the will and of re-attaching it was done at any other time. The testatrix was a widow

and childless, and Hicks was her nephew.  He had lived
with her and her husband from the time he was thirteen
years old, for a number of years learning the druggist
business, in which Mr. Leach had been engaged.  About
sixteen years ago he left Ashton, and since that time,
with the exception of two years, has lived in Nebraska.
Mr. Leach died in 1899, leaving a will, in which Hicks
and the widow were named as executors.  Hicks, being
a resident of Nebraska, could not act as executor, but he
came from Nebraska to attend the funeral and assisted
his aunt in inventorying the estate and attending to her
business, and it was at this time, about a month after the
death of Mr. Leach, that the will in question was made.
At that time, after the will of Mr. Leach was probated
at Dixon, he took her to the office of the attorney who
drew this will.  She told the attorney that Hicks had a
memorandum which he had written as she wanted to dis-
pose of her property.  The attorney took the memoran-
dum and interrogated her as to each item, thirty-four in
number, going over it item by item, and asking her the
relationship of the parties and other particulars to en-
able him to draw the will.  She answered the questions,
stating as to each item that it was what she wanted, and
she gave some reasons for the disposition of her property
which she was making.  Hicks was present with her at
this time.  The will was prepared according to her direc-
tions and mailed to Ashton, where it was executed, and
Hicks called in the witnesses by whom it was attested.
There was no evidence of any specific acts or efforts by
Hicks to influence her to make the will as it was made.

The court instructed the jury, at the instance of the
contestant, by the second instruction, that the first in-
quiry in the case was whether the paper offered in evi-
dence was executed, witnessed and acknowledged by the
testatrix in the manner required by law.  It was un-
disputed that she executed the will by signing it in the
presence of the witnesses, and that they attested it at

her request, by signing the attesting clause in her presence. It was not necessary that she should also acknowledge it. Proof of either signing or acknowledging a will in the presence of witnesses is sufficient, and it is not even necessary that the subscribing witnesses know that the instrument is a will. (*Brownfield* v. *Brownfield*, 43 Ill. 147; *Gould* v. *Theological Seminary*, 189 id. 282.) The additional requirement that she should acknowledge it was not the law. The third instruction given at the instance of the contestant repeated the error, and required the proponent to prove that the instrument was legally executed, acknowledged and witnessed as a will. It is as follows:

"You are instructed that on appeal from an order of the county court refusing probate of a will, as in this case, the party insisting on the validity of the will has the burden, at the outset, of proving by one or more of the subscribing witnesses, if alive and within the jurisdiction of the court, that the instrument was legally executed, acknowledged and witnessed as a will; and where, as in this case, the instrument bears unmistakable evidence of having had the signature of the testator, together with the attesting clause, severed from the balance of the document, the added burden also rests on proponent, in making out her case, of proving by at least one of such subscribing witnesses that the instrument is the one which Barbara E. Leach signed, or acknowledged signing, in their presence."

This instruction also required the proponent to make the proof by at least one of the subscribing witnesses, and that is not the law even as applied to the execution. The proponent is not confined to the testimony of subscribing witnesses, where, from failure of memory or intentionally, they fail or refuse to testify to the execution of the will. On appeal from the refusal of the county court to admit a will to probate the proponent may support it by any evidence competent to establish a will in chancery. He is neither limited to nor bound by the

testimony of the subscribing witnesses, but may establish the validity of the will by any legitimate evidence. (*Crowley* v. *Crowley*, 80 Ill. 469; *Thompson* v. *Owen*, 174 id. 229; *Illinois Masonic Orphans' Home* v. *Gracy*, 190 id. 95.) In this case the proof of execution was made by all of the subscribing witnesses, and perhaps the instruction would have done no harm as to that feature, but it put the burden on the proponent to prove by at least one of the subscribing witnesses that the instrument was the same one which the testatrix executed. It said that the instrument bore unmistakable evidence that a part of it had been severed from the balance, and that proponent had the added burden of identifying the instrument, on appeal, by at least one of the subscribing witnesses, as being the precise instrument executed. A subscribing witness is not required to know that he is attesting a will, or what its provisions are, so as to identify it. A subscribing witness attesting a signature to a will is no more competent on the question whether anything has occurred to the will subsequent to the attestation than anybody else, and the proponent is not limited to the testimony of such a witness. On the question in this case it was error to tell the jury that the proponent must explain the cutting off and re-attaching of a part of the will by at least one of the subscribing witnesses. That she could not do. They knew nothing about it, and the law did not require that they should.

The court gave several other instructions relating to the condition of the instrument offered as a will. The fourth and twenty-third are substantially alike, and both cast the burden on the proponent of proving, by a preponderance of the evidence, that notwithstanding the cutting off of part of the will and re-attaching it, it was still the will of the testatrix. The fourth is as follows:

"You are instructed that a person presenting a mutilated will for probate assumes the burden of accounting for the mutilation by showing such circumstances

as prove, by a preponderance of the testimony, that not-withstanding the changed condition of the paper it is still the will of the maker; and if in this case proponent has failed to so account for the mutilation of the alleged will of Barbara E. Leach, then you should find that it is not her will."

This instruction directed the jury to find against the will unless the proponent proved, by a preponderance of the testimony, that notwithstanding the changed condition of the paper it was still the will of the maker. The execution of the will was fully proved, and if the act of cutting and re-attaching was by the testatrix it could not affect its validity. The execution having been proved, if the part was cut off by her as a revocation and re-attached by some one else, the burden was on the contestant to show the revocation. If it was cut off and re-attached by some unauthorized person, the validity of the will would not be affected. It was the duty of the proponent, in presenting the will, to offer proof of its genuineness, and the preliminary inquiry on that subject was for the court, so far as to determine whether it should go to the jury. Whether there is sufficient evidence of the execution of an instrument and its identity to allow it to go to the jury is for the court, but if the paper is properly admitted to the jury the law does not raise any presumption for or against a claim that it has been altered. An inspection of the instrument itself may throw suspicion and distrust upon it, but the question is one of fact, and not of law. The law indulges no presumption as to the condition of an instrument when it is executed or whether there has been a subsequent change. In this case, the only question about the will arose from the appearance of its having been cut and pasted together, and the evidence and circumstances. In determining the question of fact the jury might consider the appearance of the will in connection with the relation of the parties to it, and their interest in what had been

done, and all the evidence and circumstances relating to it. The appearance and circumstances might be such that the court or jury, considering it as a question of fact, would require an explanation, and without it an inference against the instrument might be justified, but the law raises no presumption on the subject. (*Gillett* v. *Sweat*, 1 Gilm. 475; *Reed* v. *Kemp*, 16 Ill. 445; *Catlin Coal Co.* v. *Lloyd*, 180 id. 398.) The contestant attacked the will on the ground of undue influence, and under the terms of the instruction the burden of proof was also cast upon the proponent on that question, by requiring her to prove that the instrument was the will of the testatrix.

The fifth instruction given at the instance of the contestant was as follows:

"You are instructed that although you may believe, from the evidence, that the paper offered in evidence as the will of Barbara E. Leach was abstracted from the safe of the American Express Company at Ashton on the afternoon or evening of May 6, and it was restored to agent McMillin on the morning of the 7th, as detailed by him on the witness stand, still these facts, standing alone, do not prove that the will was mutilated by the person or persons so abstracting or returning it."

McMillin was the express agent. He testified to the will having been taken from the safe of the express company and taken out of the package and returned, and that the seals had been taken off and others substituted. That was the only evidence on the subject of any tampering with it or interference with the will, and the jury should have been left free to draw their own conclusions, without the court telling them what the evidence was sufficient to prove. The instruction invaded the province of the jury.

The sixth instruction was given as follows:

"The court instructs you that the circumstance, if proven, that a will has been procured to be written by a person largely benefited by it, will excite stricter scru-

tiny and require stricter proof of volition than where such circumstance is not found. In such case, proof should be such as to satisfy the jury, by a preponderance of the evidence, that the testator has not been imposed upon, but knew what disposition he or she was making of his or her property when the will was made."

This was an abstract proposition of law and in the nature of an argument on the question of fact. It is true that this and other courts, in discussing questions of fact, have made statements similar to that of the instruction as reasons for their conclusions. It is probably true that a jury would consider such circumstances, and a court, in reviewing the finding of the jury, would do so; but that does not justify giving it to the jury as a rule of law. It was erroneous and misleading in this case, because there was no question or issue whether the testatrix had been imposed upon and did not know what disposition she was making of her property by the will. The evidence, without contradiction, established that she was neither imposed upon in the terms of the will nor ignorant of what she was doing, but that she understood exactly what the will was and intended to make it as she did. The only contest was whether she was unduly influenced by Hicks to make it in that way. The instruction not only cast the burden on the proponent, but required her to satisfy the jury, and an instruction of that character has always been condemned. *Ruff* v. *Jarrett*, 94 Ill. 475.

Quite a number of instructions were given directing the jury to find against the validity of the will unless the proponent should prove, by a preponderance of the evidence, that its provisions were reasonable and fair, if they should find the facts that Hicks would be largely benefited by the will and that he took an active part in having it prepared and executed. The seventh, eleventh and fourteenth were as follows:

7. "You are instructed that where a person, who by the provisions of a will will be benefited largely in ex-

cess of others bearing the same and even closer relationship to the testator, takes an active part in having the will prepared and executed, he is bound to show, by a preponderance of all the evidence, that the will is, under all the circumstances, reasonable and fair and expresses the will of the testator."

11. "You are instructed that if you believe, from the evidence, that prior to and at the date of the instrument offered in evidence as the will of Barbara E. Leach, she relied on her nephew, Charles E. Hicks, to transact the greater part of her business subsequent to her husband's death, and that he then had access to all her papers and had her confidence; and if you believe also, from the evidence, that said Charles E. Hicks would receive the bulk of her estate under the provisions of said instrument, and that her brothers and sisters would receive a much smaller share than if she had died without leaving a will, and that her relations to her brothers and sisters were such as naturally to call for a liberal remembrance in her will, then the burden rests on the proponent to show, by a preponderance of the evidence, that said instrument is reasonable and fair under all the circumstances, and if she has failed to make such proof you should find the instrument not to be the last will and testament of Barbara E. Leach."

14. "If you believe, from the evidence, that the relations of Barbara E. Leach to her brothers and sisters were such as to have naturally impelled her to liberally provide for them, and that it was through and because of the fraudulent and undue influence of her nephew, Charles E. Hicks, over her that she was prevented from doing this, and was prevailed on to bequeath to him the bulk of her property, and that such disposition of her estate was contrary to her deliberate wish and purpose, then you should find that the will offered in evidence is not the will of said Barbara E. Leach."

It will be noticed that the eleventh makes it a condition that Hicks would receive the bulk of the estate, which was not true under any evidence, although he would receive a large share of it and more than any other; and the fourteenth assumes as a fact that there was fraudulent and undue influence on his part.  It was error to assume the existence of the vital fact in controversy.  The most serious error, however, is in resting the validity of the will upon the opinion of the jury as to its being reasonable and fair.  A person of testamentary capacity has a lawful right to dispose of his property as he may choose, and the reasonableness and fairness of his will are not questions for the jury.  If he is competent to make a will and undue influence is not proved he may dispose of his property as he sees fit, and it makes no difference whether it is just or not.  (*Nicewander* v. *Nicewander,* 151 Ill. 156; *Hollenbeck* v. *Cook,* 180 id. 65.)  The validity of the will does not depend upon the question whether, in the opinion of the jury, it is just and wise and a proper disposition of the testator's property.  (*Carpenter* v. *Calvert,* 83 Ill. 62; *Francis* v. *Wilkinson,* 147 id. 370.)  The burden was on the proponent to show the due execution of the will and that the testatrix was of sound mind and memory at the time of its execution, but undue influence being alleged, the burden of proof was upon the contestant on that question.  The *prima facie* case for the will was made by the statutory proof, and the burden of proof was on the party against whom the issue would be found if there were no evidence at all on the subject.  As to the allegation of undue influence, if no evidence were offered the issue would be found against the contestant.  The effect of the instructions was to cast the burden on the proponent to show that there was no undue influence, contrary to the established rule.  Furthermore, under these instructions, if Hicks proved that he exerted no undue influence whatever, he would be required to show that the will was fair and reasonable in

its provisions, or have it defeated upon the ground that he was the chief beneficiary and took the part above stated in the execution of the will. The unreasonableness of the testamentary disposition might be considered as a circumstance, in connection with all the other facts and circumstances proved in the case, on the question whether there was undue influence. (*Kaenders* v. *Montague*, 180 Ill. 300.) But if there was no undue influence the will might be unfair and unreasonable and yet perfectly valid. The validity of a will can never depend upon the question whether it is reasonable and fair and such a will as the jury think the testator ought to have made. If undue influence was proved the will was void; if it was not proved it was valid, and the question whether it was fair and reasonable was no concern of the jury.

It is useless to pursue the instructions further. As a series they were in hopeless conflict with the law, and invited the jury to decide what sort of a will would be fair and reasonable according to their own standard, and to determine therefrom whether the will was good or not. Correct instructions were asked by the proponent and given, but they are utterly irreconcilable with the series given at the request of the contestant. When all are taken together they cannot be understood or harmonized, but those given at the instance of one party flatly contradict the rules of law stated in the others. Instructions prepared by the proponent and given place the burden of proof of undue influence upon the contestant, and those given at the request of the contestant put the burden on the proponent to negative the charge. The instructions could not be brought into harmony by the court or jury, and the judgment must be reversed in order that the case may be submitted to another jury on correct rules of law.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*