*In re* HORN'S ESTATE.

CURRAN *v.* BARTOW.

WILLS — EXECUTION — ATTESTATION — SUBSCRIBING WITNESSES —
ORDER OF SIGNATURE.
    When there is no explicit requirement of the statute as to the
    order of signatures to a will, and when all who partici-
    pate in the execution of a last testament are present at the
    same time, and their acts are part of one continuous transac-
    tion, it is immaterial that one witness subscribed to the will
    before the testator.[1] 3 Comp. Laws, § 9266.

Error to Wayne; Brooke, J. Submitted February 8,
1910. (Docket No. 126.) Decided April 1, 1910.

Catherine Curran presented for probate the last will
and testament of George Horn, deceased. The will was
allowed in the probate court, and Frederick Bartow, con-
testant, appealed to the circuit court. A judgment for
proponent on a verdict directed by the court is reviewed
by contestant on writ of error. Affirmed.

*Dohany & Dohany*, for appellant.

*Bowen, Douglas & Eaman*, for appellee.

MCALVAY, J. Contestant appealed to the circuit court
of Wayne county from the order admitting to probate the
last will and testament of deceased. A trial was had in
the circuit court, which resulted in a verdict directed for
proponent. From a judgment entered upon such verdict,
contestant has removed the case to this court by writ of
error for review.

The sole question presented in the case is whether there
was a due and valid execution of the will presented for

_____
[1] As to signature of witnesses to will before testator signs it, see
note to *Brooks* v. *Woodson* (Ga.), 14 L. R. A. 160.

probate. The testator died October 12, 1906. The will was executed April 4, 1904. The testator and the two witnesses to the will lived in the township of Redford, Wayne county. The witness John W. Hawthorne kept a country hotel. The other witness, Ansel B. Pierce, was a farmer and a notary public. He had held township offices, and was accustomed to prepare papers for people in that community. On April 4, 1904, Mr. Pierce, with Mr. Horn, the testator, came to the hotel of Mr. Hawthorne, who had known Mr. Horn for more than 20 years. The testator was a farmer and very bright. His health appeared to be excellent. While at his hotel on that occasion, Mr. Pierce called Hawthorne to come and witness a paper. He went into the sitting room, where Pierce and Horn were, and Pierce said to him that Mr. Horn had made his will, and wanted him to sign it as a witness. Mr. Horn told him he was executing his will. He testifies:

"I signed first. Mr. Pierce showed me where to sign. Then Mr. Horn signed next. Then Mr. Pierce, to the best of my recollection. * * * I signed first, and then Mr. Horn made his mark, and then Mr. Pierce signed."

The signature of Mr. Horn is by his mark, which this witness saw him make. . The record shows that these parties were together during the whole time, and the signing, attesting, and witnessing of this will was one continuous transaction. The other witness to this will, Mr. Pierce, died before the testator.

The claimed irregularity in this execution is the signing of Hawthorne as a witness before the testator had signed. The record shows that the other witness signed immediately after the testator. Section 9266, 3 Comp. Laws, contains the statutory provisions relative to the execution of wills. The material portion of the statute reads:

"No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in

writing, and signed by the testator, or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses."

The authorities are not in harmony upon the question here presented. This court has never passed upon it. In the case of *Schermerhorn* v. *Merritt*, 123 Mich. 310 (82 N. W. 513, 83 N. W. 405), cited as authority by contestant, the question was not involved. An examination of the original record and briefs discloses quite the contrary. The witnesses to the claimed will signed at different times. The testatrix and the two alleged witnesses never met together. When the first witness signed, there was no signature to the paper. There was no proof that her name was written by her in the body of the instrument. When the second witness signed, there was no signature to the will until he told her she must sign it at the bottom before he signed. In the case at bar no irregularity in the matter of the execution of the will is claimed except the order in which the instrument was signed by the testator and one witness. We find abundant authority holding that, in the absence of express statutory provision, in the execution, attestation, and witnessing of wills the order of signature is immaterial, where such acts are a part of one continuous and complete transaction. That there is a line of authorities holding the contrary doctrine has already been stated. These authorities will be discussed later.

Kentucky was among the first of the United States to hold the doctrine that the order of signing, attesting, and witnessing a will was not material. The statute of that State of 1797, relative to the execution, attestation, and witnessing wills, contained like provisions with the same statute in this State. In *Swift* v. *Wiley*, 1 B. Mon. (Ky.) 114, the court, distinguishing between the acts of attestation and subscription of wills by witnesses, said:

"Attestation is the act of the senses. Subscription is the act of the hand. The one is mental the other is mechanical, and to attest a will is to know that it has been

published as such, * * * but to subscribe a paper published as a will is only to write on the same paper the names of the witnesses for the sole purpose of identification. There may be a perfect attestation in fact without subscription. But, to insure identity and prevent the fraudulent substitution of any other doctrine than that which has been published and attested, the statute providently requires the attesting witnesses to subscribe their names in the presence of the testator. But it does not prescribe the order of the attestation and the subscription; and the attestation being intended to prove that a will had been published, but the subscription being required only to identify the document which had been attested as a will; whether the one or the other of these acts shall have been first in time cannot be essential to the objects of the statute or the effect of the publication; nor can it be material whether the names of the attesting witnesses or that of the testator shall have been first subscribed, if, as in this case, those witnesses had been present when the testator wrote his name or acknowledged it as his signature, and being called upon for that purpose, actually witnessed or attested that fact. Here, as all three of the subscribing witnesses were present at the final publication of the will, attested the fact of signing and publishing by the testator, and either then subscribed or acknowledged the subscription of their respective names on the same paper, so as to insure the identification of the will as then published and attested, every purpose of the statute has been fulfilled, and not even a letter of it violated or disregarded. * * * Indeed, were it material, we might, with obvious truth and propriety, consider the subscription of the names of the three attesting witnesses, and of that of the testator, as one continuous series of acts essentially indivisible as to time; the two first witnesses having remained with the testator until they had in fact attested his subscription and that of the third witness, and, all being present and attesting all together, the final act of publication and of attestation and subscription as to each and all."

A case quite similar to the case at bar was decided in Virginia in 1849. The briefs of the attorneys are exhaustive and worthy of examination. The court, in concluding its opinion, said:

"And, moreover, the fact whether in the order of time the testatrix made her mark before or after the subscrip-

tion of the witnesses is, under the circumstances, in no wise material, insomuch as the whole transaction must be regarded as one continuous uninterrupted act, conducted and completed within a few minutes, while all concerned in it continued present, and during the unbroken supervising attesting attention of the subscribing witnesses." *Rosser* v. *Franklin*, 6 Grat. (Va.) 1, 26 (52 Am. Dec. 97).

In 1856 the same rule was adopted in Connecticut. The court said:

"So far as the question has been noticed in the American courts, the inclination seems to have been to consider the order in which the testator and the witnesses put their names to the will as immaterial, provided the instrument is in all other respects legally executed. * * * The general and regular course undoubtedly is for the testator in the first place to sign and execute the will on his part, and then call upon the witnesses to attest the execution by subscribing their names. But where, as in the present case, witnesses are called to attest the execution of a will, and, being informed what the instrument is, subscribe their names thereto as witnesses, and the testator on his part, and in their presence, duly executes the instrument as his will, and all is done at one and the same time, and for the purpose of perfecting the instrument as a will, we cannot say that it is not legally executed merely because the names of the witnesses were subscribed before that of the testator." *O'Brien* v. *Galagher*, 25 Conn. 229, 231.

It was held in Pennsylvania in 1860 as follows:

"Our statute contemplates, undoubtedly, a signature by the testator and then a signing by witnesses in attestation of that signature, when witnesses subscribe at all; but where a transaction consists of several parts, all of which occur at the same moment and in the same presence, are we required to undo it because they did not occur in the orderly succession which the law contemplates? No language of our statute of wills imposes any such necessity upon us, and we would not decide anything so unreasonable, except under stress of very positive statutory language." *Miller* v. *McNeill*, 35 Pa. 222 (78 Am. Dec. 333).

The courts of the States mentioned have not departed

from the doctrine established.     Recent cases are found in Illinois and South Carolina.     In the Illinois case the cases above mentioned are cited and approved as holding the more reasonable doctrine.     The court says:

"If all of the several acts required by the statute are done upon the same occasion in the presence of the testator and the attesting witnesses, and, as said in the case cited above, under their unbroken supervising attention, and as parts of one entire transaction, we cannot hold that the instrument is rendered inoperative as a will by merely proving the fact that the signatures of the witnesses were affixed before the signature of the testator.     *Gibson* v. *Nelson*, 181 Ill. 122, 128 (54 N. E. 901, 903, 72 Am. St. Rep. 254).

The South Carolina court, in deciding the question in a similar case, after calling attention to the English statute and English decisions holding a contrary doctrine, said:

"In acts substantially contemporaneous it cannot be said that there is any substantial priority.     *     *     *     No doubt the usual and more orderly way of executing a will is for the testator to sign first and then the witnesses; but to hold that a mere change in the order of signing, accidentally or otherwise, would destroy the writing as a will is to sacrifice substance for mere form.     When the statute expressly, or by necessary inference, requires such formality, then nothing is left but to enforce it; but the court will not stress formalities which the statute does not."     *Kaufman* v. *Caughman*, 49 S. C. 159 (27 S. E. 16, 61 Am. St. Rep. 808).

In the cases hereinbefore cited, the statutes relative to the execution of wills in the several States, with perhaps one exception, are substantially the same as in this State.

Under the English statute, 1 Vict. chap. 26, § 9, the English courts hold that signature or acknowledgment by the testator must precede, in point of time, subscription by the witnesses.     That statute by its requirement indicated with particularity the details of the manner of executing wills, and has been strictly construed by the English courts.     A few of the American State courts have followed the English decisions and the English reasoning,

and in most cases where their statutes of wills are copied after the English statute, or have made additions to it. These States are Massachusetts, New Jersey, and New York. The claim that in the United States the general rule upon the proposition under discussion, irrespective of statutes, is the same as in England, is unfounded. Every American case cited in the encyclopedias or in opinions of courts as authority to that effect has been read with care, with the result above stated. In several of them statements to that effect have been made, which were clearly *dicta,* and where the question was not before the court. In the leading case relied upon by contestant— *Chase* v. *Kittredge,* 11 Allen (Mass.), 49 (87 Am. Dec. 687)—that court in a learned and exhaustive opinion analyzes and discusses all of the English and other cases upon the subject of the execution of wills, and the necessary requirements to their validity in that respect, and declares in favor of the doctrine that witnesses should attest and subscribe after a testator has signed his will. That precise question, however, was not in the case. We quote from the opinion to show the precise question the court in fact decided:

"This analysis of the cases shows that by the preponderance of American authority, as by the uniform current of the English decisions, an express requirement of statute that one person shall sign or subscribe in the presence of another is not complied with by signing in his absence and merely acknowledging in his presence. And upon full consideration we are satisfied that in this, as in most other legal matters, reason and principle are on the side of authority and precedent. * * * As it appears by the testimony stated in the report that one of the attesting witnesses subscribed his name before the testator signed and in his absence, the instrument offered for probate should have been disallowed."

In the only Massachusetts case where the question was before that court it recognized the fact above suggested, and said:

"The only question with which we need to deal upon

this report is whether an instrument is duly executed as a will under our statutes if the witnesses sign first, in the presence of the testator, and the testator signs immediately afterwards in their presence; the whole transaction being as completely one as it can be with that order of events. The question has been so fully answered by Mr. Justice Gray, in delivering the judgment of this court in *Chase* v. *Kittredge*, 11 Allen (Mass.), 49 (87 Am. Dec. 687), that we think discussion unnecessary. * * * It is true in that case the witness in question signed in the absence of the testator and some time before him, but the Chief Justice does not confine his reasoning to that case, and evidently meant, with the concurrence of his brethren, to establish a general rule in the words which we have quoted. We regard that rule as founded on good sense and the plain meaning of the words of the statute." *Marshall* v. *Mason*, 176 Mass. 216 (57 N. E. 340, 79 Am. St. Rep. 305).

By this decision the English rule was first adopted by that court in a case where it could be considered *stare decisis*. In the case of *Lacey* v. *Dobbs*, 63 N. J. Eq. 325 (50 Atl. 497, 55 L. R. A. 580, 92 Am. St. Rep. 667), the majority of that court, under a statute declared by it to be more stringent than the English statute, approves the English cases, and cites Massachusetts and New York cases in support of its conclusions, and also claims *dicta* contained in cases from other States as authority. The statute of New York, like that of New Jersey, may be said to be more stringent than the English statute of 1837, and, as above stated, the courts of that State follow the English decisions, viz.: *Jackson* v. *Jackson*, 39 N. Y. 153, and *Sisters of Charity* v. *Kelly*, 67 N. Y. 409, both of which cases are distinguishable from the case at bar. In *Reed* v. *Watson*, 27 Ind. 443, and *Duffie* v. *Corridon*, 40 Ga. 122, which are cited by contestant as committing those courts to the doctrine contended for, those courts did state the doctrine as claimed, but reference to the facts in each case will satisfy the investigator that such statements were not necessary to a decision of those cases.

What may be called the later or American doctrine, as
announced in the cases first discussed in this opinion, has
received criticism by at least two of the courts which fol-
low the English reasoning.    While not conceding that
such criticism is merited, it is suggested that where there
is no explicit requirement of the statute as to the order of
the signatures, and when all who participate are present
at the same time and their acts are part of one continuous
transaction, it requires no extended argument to determine
that the order of such signing is immaterial under such a
statute.    Such a conclusion is founded upon sound reason,
and, we think, is supported by the weight of American
authority.    We are of the opinion that the construction
contended for by contestant is narrow and inequitable,
and, in a case like the present, would make the validity of
a will depend upon the capricious memory of one person,
subject to such possible influence as the activity or in-
ducements of interested parties might suggest.

The judgment of the circuit court is affirmed.

MONTGOMERY, C. J., and MOORE, BLAIR, and STONE,
JJ., concurred.