MARY JANE SELLERS *v.* CHARLES S. HAYDEN, EXECUTOR.

[No. 32, October Term, 1927.]

*Decided January 10th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

118

*William P. Cole, Jr.,* and *Joseph N. Packard,* submitting on brief, for the appellant.

*Charles S. Hayden,* with whom was *Elmer R. Haile* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

George Robert Coates, of Baltimore County, on the 13th day of May, 1924, executed a paper writing purporting to be his last will and testament, by which he devised all his property, real, personal and mixed, to his nephew, William C. Coates, and appointed Charles S. Hayden his executor; and died on the 16th day of March, 1925.

The paper writing was thereafter, on the 25th day of March, 1925, admitted to probate by the Orphans' Court of Baltimore County, "as the true and genuine last will and testament of the said George Robert Coates, deceased."

The appellant, Mary Jane Sellers, a sister of the testator, filed a caveat to said alleged will, and on the 18th day of May, thereafter, upon her petition, issues were framed by the Orphans' Court of Baltimore County, and by it sent to the circuit court for that county for trial by jury.

The trial resulted in a verdict against the caveator, on the issues submitted, and she has appealed to this court.

The only question presented by this appeal is whether the paper writing, said to be the will of George Robert Coates, was executed in compliance with section 332 of article 93 of the Code, which provides as follows: "All devises and bequests * * * shall be in writing and signed by the party so devising or bequeathing, * * * or by some other person for him, in his presence and by his express direction, and shall be attested and subscribed in the presence of the said devisor by two or more credible witnesses, or else they shall be utterly void and of none effect."

It is contended by the caveator that the will was not validly executed, because, as she claims, the record discloses that two of the witnesses subscribed their names thereto before it was signed by the testator, and that they did not again sign their

names, or acknowledge their signatures as witnesses, after the same had been signed by him.

As the testator could not write, he executed the will by making his mark. The will contained the usual attestation clause, and was attested by three subscribing witnesses, John E. Hines, Mary Elizabeth Hines, and Charles S. Hayden, the latter an attorney and draftsman of the will. These witnesses appeared before the register of wills for Baltimore County, on the 21st day of March, 1925, when said paper writing was produced for probate, and each of them made oath at such time "that they heard him (George Robert Coates) publish, pronounce, and declare the same to be his last will and testament; that at the time of his so doing, he was to the best of their apprehension, of sound and disposing mind, memory and understanding, and that they subscribed their names as witnesses to this will, in his presence, at his request, and in the presence of each other."

Two years later, on March 29th, 1927, at the trial of the issues, John E. Hines testified that he knew George Robert Coates, who lived next door to him, that the testator came to his home on the day the will was executed, and asked him to be a witness to it, that the execution of the will took place at witness' home, where he signed it as a witness, in the presence of the testator and the other witnesses; that they were all in the room together. When asked if the testator signed the will in his presence, he answered: "He (meaning the testator) did something, but whether he did really that or not, he would not like to say. He did not remember seeing the testator with a pen in his hand at any time on the occasion the will was witnessed by him." Upon being asked whether he was able to swear positively that Mr. Coates signed the will in his presence, he said "No, I just cannot say that positively that he did. We were all there, and it was all fixed up and I supposed really that Mr. Coates had signed it."

Charles S. Hayden testified that he was a member of the Baltimore City bar, that the will in question "is the will drawn by him at the request of George Robert Coates, in the home of Mr. and Mrs. Hines, and written by the witness

there; that the testator signed the will in his presence, by mark, and that the pen was in the witness' hand and touched by the testator; that the mark was made in his presence and also in the presence of Mr. and Mrs. Hines, as they were all there together and he saw the whole thing; the testator requested him to sign the will as one of the witnesses, which he did, and in the presence of the testator, at his request and in the presence of the other two witnesses, * * * that the will was written at the dictation and request of the testator * * * and that the signature was written by the witness, as the deceased (the testator) could not write."

Mary Elizabeth Hines, the other witness, testified that she also knew George Robert Coates, had known him for eighteen or nineteen years, "he was a neighbor," that she was asked by Mr. Coates to witness his will, which she did, in his presence and also in the presence of her husband and Mr. Hayden; that she saw Mr. Coates make his mark to the will and Mr. Hayden wrote the testator's name and held the pen, because the testator could not write; that the pen was held at the time the mark was placed in the signature and that she saw him do that, that she, as a witness, subscribed to said will "before George Robert Coates put his hand on the pen and made his mark thereto, and that at the time she signed the will there was no mark thereon, made by Mr. Coates; that she only signed the will once and that after the testator did touch the pen * * * she did not place her signature as a witness thereto after that was done; that the witness John E. Hines signed at the same time she did, and at the time the witness John E. Hines signed his name, the pen had not been touched and the mark not placed by Mr. Coates on the will." Upon being asked when Mr. Coates touched the pen and made his mark, she said: "After we got through, Mr. Hines and I, he made his mark," and that just a few minutes intervened between the two acts; Mr. Coates * * * told her the paper was his will and that he made his will and would she sign; that the will was read to Mr. Coates by Mr. Hayden; she heard him read it; and

after it was read he put his mark, and said it was his last will. She saw him sign the will just immediately after she signed."

Should, we hold, upon this evidence, that two of the witnesses subscribed their names to the will before it had been signed by the testator, then the question here presented is whether, under our statute of wills, an instrument of writing intended as a will, appearing to have been executed and witnesses with all the formalities required by the statute, must fail to take effect as a will merely because the act of the testator in signing the will followed that of the witnesses, or two of them, though done in their presence, on the same occasion, and as a part of one transaction. The authorities are not in harmony upon the question here presented. This court, however, has never passed upon it.

In the early Kentucky case, *Swift v. Wiley,* 1 B. Mon. 114, where the statute, like ours, requires attesting witnesses to subscribe, the court, after stating the meaning and effect of both attestation and subscription, said, the object and purpose of requiring subscription is "to insure identity and prevent the fraudulent substitution of any other document than that which had been published and attested. The statute providently requires the attesting witnesses to subscribe their names in the presence of the testator, but it does not prescribe the order of attestation and subscription; and the attestation being intended to prove that a will had been published, but the subscription being required only to identify the document which had been attested as a will; whether the one or the other of these acts shall have been first in time, cannot be essential to the objects of the statute, or the effect of the publication; nor can it be material whether the names of the attesting witnesses or that of the testator shall have been first subscribed, if, as in this case, those witnesses had been present when the testator wrote his name or acknowledged it as his signature, and, being called on for that purpose, actually witnessed or attested that fact. * * * Indeed, were it material, we might with obvious truth and

propriety, consider the subscription of the names of the three attesting witnesses, and of that of the testator, as one continuous series of acts, essentially indivisible as to time."

This court, too, has said that the object and purpose of having witnesses subscribe to a will, under our statute, was one of identification. *Brengle v. Tucker,* 114 Md. 602.

In the Virginia case of *Rosser v. Franklin,* 6 Gratt 1, 26, the court said: "The fact, whether in the order of time the testatrix made her mark before or after the subscription of the witnesses is, under the circumstances, in no wise material, in so much as the whole tranasaction must be regarded as one continuous, uninterrupted act, conducted and completed within a few minutes, while all concerned in it continued present, and during the unbroken supervising attesting attention of the subscribing witnesses."

In *O'Brien v. Gallagher,* 25 Conn. 229, it was said, the general and regular course undoubtedly is for the testator in the first place to sign and execute the will on his part, and then call upon the witnesses to attest the execution by subscribing their names. But where, as in the present case, witnesses are called to attest the execution of a will, and, being informed what the instrument is, subscribe their names thereto as witnesses, and the testator on his part, and in their presence, duly executes the instrument as his will, and all is done at one and the same time, and for the purpose of perfecting the instrument as a will, we cannot say that it is not legally executed merely because the names of the witnesses were subscribed before that of the testator.

In *Gibson v. Nelson,* 181 Ill. 122, a case very similar to the one before us, the Supreme Court of Illinois, in discussing that case, said: "If all of the several acts required by the statute are done upon the same occasion, in the presence of the testator and the attesting witnesses, and under their unbroken supervising attention and as parts of one entire transaction, we cannot hold that the instrument is rendered inoperative as a will by merely proving the fact that the signatures of the witnesses were affixed before the

signature of the testator. In the case at bar, this fact did not appear by the testimony of the subscribing witnesses given in the probate court when the will was admitted to probate, but they testified to it on the hearing of the issue in this case in the circuit court. The will upon its face appeared to have been properly executed and witnessed, and the mere fact, which appeared by the evidence, that the testator signed it after the witnesses had signed, was rendered harmless by the further fact, shown by the evidence, that these several acts of signing were done at the same time and as parts of the same transaction."

In *Re Horn Estate*, 161 Mich. 20, the court, after quoting very fully from the cases that support the rule holding that a will is valid where it is signed by the witnesses before it is signed by the testator, where all is done in one continuous transaction, and after discussing cases opposed to that rule, said: "Where there is no explicit requirement of the statute as to the order of the signatures, and when all who participate are present at the same time and their acts are part of one continuous transaction, it requires no extended argument to determine that the order of such signing is immaterial under such a statute. Such a conclusion is founded upon sound reason, and, we think, is supported by the weight of American authorities. We are of the opinion that the construction contended for by contestant is narrow and inequitable, and, in a case like the present, would make the validity of the will depend upon the capricious memory of one person, subject to such possible influence as the activity or inducements of interested parties might suggest."

In support of the rule thus laid down, see also *Kaufman v. Caughman*, 49 S. C. 159; *Miller v. McNeill*, 35 Pa. 222; *In re Shapter*, 35 Col. 578; *In re Carey*, 56 Col. 77; *Cutler v. Cutler*, 130 N. C. 1.

The English courts have held that signatures or acknowledgments by the testator must precede, in point of time, subscription by the witnesses. This ruling was based upon the provisions of *Statute* 1 *Vic.* ch. 26, par. 9, which by its

requirements indicated with particularity the details of the manner of executing wills, and the English courts have strictly construed that statute.

The English rule has been followed by a number of American courts. Among them are those of Massachusetts, New York, New Jersey, and Georgia. But only in a few of those cases was this precise question raised or presented, that is, whether a will is valid if subscribed to by the witnesses before it is signed by the testator, although signed by them at his request and in his presence, and immediately thereafter signed by him in their presence, the signing of the witnesses and the testator forming one continuous transaction. In some of the American cases following the English rule, not only was the will signed by the witnesses before being signed by the testator, but were signed out of his presence, while in other cases the subscribing witnesses signed on one occasion and the testator on another, not forming any part of the same continuous transaction.

The different rules may also be accounted for, in part at least, because of the fact that statutes of the different states at times differ, and as the decision is to be based upon the particular statute, different conclusions may very properly be reached. The statute in this state is very similar to the statutes in those states from whose decisions we have quoted, holding the will valid though signed first by the witnesses, where the signing was all done in the same continuous transaction.

It is said, in some of the decisions holding otherwise, that there can be no attestation by the witnesses to the will until it is signed by the testator, for until then, there is no will to which they can subscribe. In answer to this, it may be said, nor is it a complete and valid will until it is attested and subscribed to by the attesting witnesses, in accordance with the statute, but the paper writing, to which the testator calls the witnesses attention and to which he asks them to subscribe as his will, contains the wishes and direction as to the disposition of his property, and it is to this will that

they subscribe as witnesses, in his presence, and immediately thereafter, in their presence, he signs it.

It would, we think, be a very strict construction of the statute, which does not in express terms require the testator to sign first, to hold the will invalid merely because the testator signed after the witnesses, in the same transaction, where the will in all respects complied with the express provisions of the statute.

As said in nearly all of the decisions from which we have quoted, holding adversely to the English rule, the usual and far better practice, of course, is for the testator to sign first and the witnesses subscribe their names thereafter, but should it appear that the witnesses first subscribed and, immediately thereafter, the 'testator signed the will, in one continuous transaction, we cannot accept the doctrine or rule that the will is invalid because of the testator's failure to sign the will before it is subscribed to by the witnesses.

We will, therefore, affirm the rulings appealed from.

*Rulings affirmed, with costs.*

OFFUTT, J., concurs in the result.