IN RE ESTATE OF JENNIE B. PHILLIPS, deceased.

No. 49227.

(Reported in 84 N.W.2d 406)

August 1, 1957.

Rehearing Denied September 20, 1957.

Campbell, Campbell & Caldwell, of Newton, for proponents-appellants.

Brierly, McCall & Girdner, of Newton, for contestants-appellees.

Wennerstrum, J.—This appeal has resulted by reason of a contest regarding the validity of a codicil to the will of Jennie B. Phillips. The original will and one codicil were admitted to probate without contest. The cause was tried to the court, all parties having waived a jury trial. The trial court sustained the contestants' motion made at the close of all the evidence which, we hold as hereinafter noted, was a motion to direct a verdict. The proponents of the codicil have appealed.

The testatrix was 90 years of age at the time of her death. She had been in a hospital during July 1955 and again for a

two weeks period beginning late in December 1955. The testatrix died on March 20, 1956. By reason of the contentions of the contestants it is necessary we summarize the motions made by them, as well as the evidence presented, and decide whether the court determined the case on the basis of a directed verdict or whether it found for the contestants on the merits.

The codicil in question was executed on February 26, 1956, but was dated February 25, 1956. It was so dated at the suggestion of the testatrix inasmuch as February 26 was Sunday. There is evidence the testatrix, although bedfast and in a weakened condition, was possessed of her faculties up to and near the time of her death. She had a malignancy. The evidence showed the codicil was signed in the presence of two witnesses, that they signed in the presence of the testatrix and in the presence of each other, and all on the same occasion. The attestation clause was typed and there is evidence it was originally pinned to the purported codicil. It is also shown about two days following the signing of the codicil by the testatrix, and the attestation clause by the witnesses, the nurse attendant removed the pin and fastened the attestation clause with glue to the codicil. It had been written in longhand on two sides of an ordinary piece of personal stationery.

One of the witnesses testified: "Mrs. Jennie B. Phillips signed a signature in the presence of my husband and me. I don't know whether it was on this sheet of paper or not because we watched her sign her name. On the date indicated there, February 25, my husband and I signed in the presence of Mrs. Phillips and in the presence of each other. * * * I didn't really look at the paper, this sheet of paper when I signed, so I couldn't swear to it that it was this particular sheet of paper, but this slip was attached to a paper and it looked like this paper." This witness also testified: "This part that is typed, upon which my name and Mr. Nibe's name appear was to the best of my recollection paper-clipped to another piece of paper at the time I signed it, that is the way I remember it. It is not paper-clipped now. It is glued. * * * According to my best recollection I and Mr. Nibe signed a piece of paper and then something was taken over to Mrs. Phillips to sign."

The other witness testified: "Mrs. Jennie B. Phillips signed her name there that morning in the presence of my wife and me when we were there. Mrs. Nibe and I on the date indicated signed this in the presence of Mrs. Phillips and in the presence of each other. * * * I do not recall if the attestation clause which is the typed piece of paper that is pasted to this other piece was attached to this other piece of paper, I cannot honestly say how it was attached, or if it was attached I do not remember. All I remember is signing it because, as I understood it, I didn't think it was anything of any great importance, so I attached no importance to that event. * * * I could not say that this is the paper I saw Jennie Phillips sign on that day, but she did sign her name that day. When I say she signed her name that morning that is all I am testifying to. I am not certain this is the signature that I saw that day. She signed her name. That is all I know."

There is evidence the attestation clause paper had pinholes which when superimposed and glued to the codicil exactly match the pinholes in that instrument. This fact is borne out by the testimony of a questioned document expert. The original codicil in question has been certified to this court and it is apparent the pinholes in the codicil and in the attestation clause are identically positioned.

The trial court did not file any findings of fact and this is of importance in the light of the ruling made. At the close of the proponents' evidence the contestants filed a motion to direct a verdict in favor of the contestants and against the proponents on grounds which may be summarized as follows, to wit: that it appears at the time of the purported execution of the codicil the attestation clause and codicil were separate and distinct, being connected by either a pin or paper clip, and at a subsequent date said paper clips or pins were removed and the instrument was tampered with and glued at that time by the individual who claimed to have written the entire instrument; there is no proper identification of the codicil itself as being the instrument that was in truth and in fact witnessed or which was the instrument actually observed by the witnesses as being signed by the testatrix; it appears the paper was first signed by the witnesses and that a paper was signed by the testatrix and consequently the

witnesses could not have attested to an act which had not been accomplished prior to their having signed their name on the piece of paper which is attached as the attestation clause; it affirmatively appears undue influence at least can be presumed from the execution of the instrument in that it appears it was written in its entirety by one Violet Brown, she at that time being in a confidential relationship with the testatrix, and said Violet Brown is named as the main or primary legatee named in the codicil; that taking all the evidence in its most favorable light it does not appear the proponents' evidence sustained the burden of establishing the due execution of said instrument as the codicil of Jennie B. Phillips, deceased, and if the case were to be tried to a jury and the court were to submit the same to the jury, it would be the duty of the court to set the same aside if the jury found there had been a due execution of the codicil.

The court in ruling on this motion stated: "I am going to hold that this will was properly executed and your undue influence, if you have got any evidence on that you can introduce it."

At the close of all the evidence the contestants made the following motion:

"Comes now the objectors and at the conclusion of all of the testimony, both parties having rested, hereby renew the motions heretofore made at the close of the evidence on behalf of the proponents in its entirety as fully and completely as made at the time of the conclusion of the proponents' testimony at the outset of the case."

This motion definitely amounts to a renewal of the original motion to direct a verdict for the contestants. The record in connection with the ruling on this latter motion is as follows:

"THE COURT: I am going to sustain that motion on the grounds that you failed to prove a proper. Proponents except.
"CONTESTANTS: Proper execution of the codicil?
"THE COURT: Proper execution of the will.
"PROPONENTS: Are you through, Your Honor?
"THE COURT: Sure am. That's all I can do to you."

.Thereafter the court entered the following judgment: "The Court finds for contestant. Judgment against proponents for costs."

It is thus apparent the trial court entered its judgment on the basis of the sustaining of the motion to direct a verdict in favor of the contestants rather than by reason of the determination of the cause on its merits. We then must determine whether the trial court committed error in determining the cause in the manner it did.

I. If a trial court tries an issue of fact without a jury it "* * * shall find the facts in writing, separately stating its conclusions of law; and direct an appropriate judgment." Rule 179, R. C. P. No such written findings and conclusions of law were prepared by the court. This is of importance in deciding whether the cause was determined on the basis of the contestants' motions to direct a verdict in their favor. By reason of the record heretofore set forth it is apparent the trial court decided the case on the theory the codicil had not been properly executed and directed a verdict for the contestants although it had ruled otherwise at the close of the proponents' evidence. In so disposing of this case we are constrained to hold it committed error.

II. An attestation clause, which sets forth the statutory requirements regarding the execution of the will, raises a presumption of the due execution of such will where there is proof of the genuineness of the signatures of the testator and the witnesses. In re Estate of Repp, 241 Iowa. 190, 197, 40 N.W.2d 607, and cases cited.

In the case of In re Estate of Olson, 239 Iowa 1149, 1153, 1154, 34 N.W.2d 207, we observe a factual situation somewhat similar to the present case. In the cited case one of the purported witnesses to the will denied he witnessed it and stated he had no knowledge of his signing it and did not see the decedent sign any instrument as his purported will. We therein held where a witness to a will denies his signature or does not remember the execution of the instrument the signing of it may be shown by other evidence. The witnesses to the instant codicil do not deny their signature. In the Olson case we also held where there was evidence of the due execution of the will and there was an attestation clause in connection with the will a

presumption of the regularity concerning its execution is raised. And we also therein held where the attestation clause sets forth the observance of the statutory requirement as to the execution of the will a presumption of its due execution is raised where there is proof the signatures of the witnesses and testator are genuine. These latter facts are present in the case here before us. In the cited case, tried to the court, it was held there were sufficient facts presented to establish a prima-facie case and to justify the submission of the fact question to a jury, if there had been one, and to the court, as a trier of the fact. See also In re Estate of Klein, 241 Iowa 1103, 1110, 42 N.W.2d 593.

We hold the trial court committed error in directing a verdict on the fact question concerning the proper execution of the codicil and the witnessing of it by the attesting witnesses.

III. A further question to be considered in this appeal is the effect of the claimed signing of the codicil after the attesting witnesses had signed the attestation clause. In 57 Am. Jur., Wills, section 337, page 250, it is stated:

"Contrary to [a holding different from that here stated], it has been held in many jurisdictions that where the execution of a will by the testator and the attestation of the instrument by the witnesses occur at the same time and place, and as parts of the same transaction, it is immaterial, in the absence of a specific requirement in the statutes that the execution of the will by the testator precede the attestation by the witnesses, that the witnesses subscribe before the testator signs, so that the attestation immediately precedes, instead of succeeds, the execution of the will by the testator. Such rule is based upon the theory that the chances of fraud or imposition in the execution of the will are not increased by the fact that the will is attested before its execution, where the testator signs immediately after the witnesses have signed and in the presence of the witnesses. The rule is limited, however, to cases in which the attestation by the witnesses and the execution of the instrument by the testator were parts of one and the same transaction occurring at one time and at one place."

Supporting holdings to the foregoing are found in the authorities in the footnotes to the above statement, and include:

Re Shapter, 35 Colo. 578, 85 P. 688, 6 L. R. A., N. S., 575, 117 Am. St. Rep. 216; Sellers v. Hayden, 154 Md. 117, 140 A. 56, 57 A. L. R. 828; Re Horn, 161 Mich. 20, 125 N.W. 696, 26 L. R. A., N. S., 1126, 20 Ann. Cas. 1364; Gordon v Parker, 139 Miss. 334, 104 So. 77, 39 A. L. R. 931; Re Carey, 56 Colo. 77, 136 P. 1175, 51 L. R. A., N. S., 927, Ann. Cas. 1915B 951. See also 94 C. J. S., Wills, section 176, page 978.

A holding to the same effect is found in Billings v. Woody, 1948, 83 U. S. App. D. C. 219, 167 F.2d 756, where it is stated: "The requirement of the statute is only that 'all wills and testaments shall be in writing and signed by the testator, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said testator by at least two credible witnesses * * *.' * * * This was done. We agree with the Court of Appeals of Maryland in declining to hold that a will is invalid 'merely because the testator signed after the witnesses, in the same transaction, where the will in all respects complied with the express provisions of the statute.' "

Section 633.7, 1954 Code of Iowa, provides: "All other wills, to be valid, must be in writing, signed by the testator * * * and witnessed by two competent persons." There is nothing in the statute which sets forth the order in which a testator and the attesting witnesses shall place their signature to a testamentary instrument. It is sufficient if each of the signatures was affixed as a part of the same transaction and at the same time and place. Consequently it is our holding there was no lack of compliance with the statute, merely because the witnesses may have signed before the testatrix did but as a part of the same transaction. And to the extent the trial court may have based its ruling on this phase of the case we hold it was in error.

█ IV. Inasmuch as the attesting witnesses signed a claimed attestation clause which was not permanently attached to the codicil at the time of the signing of it by the testatrix and at the time the signing of the attestation clause by the attesting witnesses, we are presented with the further question whether the codicil was properly executed and witnessed. Under the circumstances disclosed by the record we must determine whether

the codicil, as executed, met the provisions of the statute heretofore quoted. We do not have exactly the same situation in the present case as in In re Estate of Puckett, 240 Iowa 986, 996, 38 N.W.2d 593, 598, but in that case the attestation clause was partly on the first page of the will proper, which had been signed by the testator. The remainder of the attestation clause was on the second page on which the witnesses signed. The two sheets of paper were stapled together. In the cited case we stated it was not essential to the validity of a will consisting of more than one sheet of paper that the sheets be fastened together. We further stated: "It is enough if they reasonably appear to be each a proper part of a completed will."

And in In re Estate of Kaiser, 150 Neb. 295, 306, 34 N.W.2d 366, 373, the court stated: "* * * 'Where there is sufficient credible proof of the identity of disconnected sheets propounded as one will, neither the physical nor coherent rule of attachment is applicable.' * * *." 57 Am. Jur., Wills, section 224, page 188, sections 225 and 226, page 189, Annotation, 30 A. L. R. 424, are cited in the last referred to case. Further annotations pertaining to the question here considered are also found in 71 A. L. R. 530 and 38 A. L. R.2d 478.

In Cole v. Webb, 220 Ky. 817, 821, 295 S.W. 1035, 1037, the factual situation is somewhat similar to the Iowa case of In re Estate of Puckett, supra. In the Kentucky case it is stated: "The law seems to be well settled that parol proof is admissible to identify the offered paper or papers with the one or ones that the testator actually subscribed and executed, and the subscribing witnesses if otherwise competent may testify to such facts. 40 Cyc. 1301; Jones v. Habersham, 63 Ga. 146; In re Swaim, 162 N. C. 213, 78 S.E. 72, Ann. Cas. 1915A, 1207; Gass v. Gass, 3 Humph. (Tenn.) 278; In re Johnson, 80 N. J. Eq. 525, 85 A. 254, 260, and opinion in the case of Montgomery v. Perkins, 2 Metc. (Ky.) 448, 74 Am. Dec. 419, announces in effect the same rule of practice."

In Palmer v. Owen, 229 Ill. 115, 118, 82 N.E. 275, 276, the Illinois court in commenting on a will written on separate sheets and not fastened together stated: "It is not necessary to the validity of a will that it should be all written on one sheet of

paper. All that is required is that the whole will shall be in the presence of the witnesses when attested by them. Harp v. Parr, 168 Ill. 459, 48 N.E. 113. Neither is it required that the witnesses to a will should read it or examine it with such care as to be able, upon an application to admit it to probate, to say that all the pages or clauses of the proposed will were the pages and clauses signed by the testator and attested by them. It is not required that the subscribing witnesses shall know that the instrument is a will. Webster v. Yorty, 194 Ill. 408, 62 N.E. 907."

And in Appeal of Sleeper, 129 Maine 194, 201, 151 A. 150, 154, 71 A. L. R. 518, it is stated: "A rule laid down in many of the cited cases seems to cover the essential requirements, viz., that it is sufficient if it appears that all the sheets of paper offered as a will were in the room at the time of the execution by the testator and that the testator intended to execute them as one instrument and as his will [citing cases]."

In re Estate of Moody, 118 Cal. App.2d 300, 307, 257 P.2d 709, 713, it is stated: "It [will] may consist of several sheets of paper, and it does not in and of itself matter that one of such sheets standing alone would not constitute an executed will. Mitchell v. Donohue, 100 Cal. 202, 207, 208, 34 P. 614, 38 Am. St. Rep. 279. If it appears that the writings were intended to be testamentary, the court will give effect to the intention if it can be done consistently with the requirements of the statute."

V. The cases referred to in the preceding division pertain, in the main, to cases where separate sheets make up the will proper. This is not the situation in the instant case. However, the purported codicil of Mrs. Phillips and the attestation clause make up the separate sheets. We hold the same general rules are applicable and it was a fact question in this case for the court to determine whether the separate papers signed by the testatrix and the attesting witnesses were signed at the same time and in the presence of each other and with the intention that they become and were a part of the codicil as a whole.

In dealing with a somewhat similar question but relating to separate sheets of a will it is stated in Goethe v. Browning, 146 S. C. 7, 12, 143 S.E. 362, 364, "When a will is composed of

more than one sheet, it may become a question of fact for a jury, in a trial of will or no will, to determine whether the unsigned sheet or sheets composing the purported will is or are in fact a part of the will of a testator. * * * If the jury is satisfied by intrinsic evidence or otherwise that the purported will composed of one, two, or more sheets is the will of testator, and render their verdict accordingly, it is sufficient."

The case of Roth v. Headlee, 238 Iowa 1340, 1343, 29 N.W.2d 923, 924, was an action in probate on a claim for services rendered a decedent during his lifetime. There was a trial to the court, a jury having been waived, which resulted in a denial of the claim. The appellant-claimant contends there should have been a directed verdict in his favor. In the cited case we commented on the circumstances which should exist in such a case as to justify a directed verdict and among other things held, as is our rule; such a verdict is justified when by "* * * giving the opposite party the benefit of the most favorable view of the evidence the verdict against him is demanded [citing cases]."

In the light of the evidence presented on the question of the two papers being a part of a whole we have reached the conclusion a directed verdict for the contestants was not proper and the trial court was in error in directing a verdict for the contestants. If the case had been tried to a jury we hold the fact questions would have required they be submitted to the jury. And consequently we hold the fact questions in the present case should have been determined by the trial court, as the trier of the facts. We likewise hold there is no basis for the contention of the proponents their motion to dismiss should have been sustained.

For the reasons stated the cause is reversed and remanded for a trial of this cause in keeping with our holdings herein.— Reversed and remanded.

All JUSTICES concur.