Judge Ewing
delivered the Opinion of the Court.
Alpheus and Hendrey W. Allison filed their bill, in the Louisville Chancery Court, alleging that their father Hendrey, in the summer of 1824 or 5, made and published his last will and testament, by which he devised all his estate to their mother during her life, and also devised his real estate after her death, it being a tract of land of about four hundred and nine acres upon which he lived, to them and their brother James, and directed the residue of his estate to the divided equally among all his children, vesting the interest of their sister Katharine Feny in them, as trustees, for her use. • That the testator died in July, 1835, having been for the last three years before his death, of non-sane mind and memory, and utterly incompetent to make or revoke a will. That their mother, in January next preceding the death of their father, and without his knowledge, privity or consent, destroyed the will. They pray that his will may be set up and established, and make their mother, the widow of the decedent, and the other heirs and their brother James, who administered on the estate, defendants.
The widow, and James answered, admitting the allegations of the bill, and she admits, that, influenced by *91 the discontent of two of her sons-in-law, she was induced to destroy the will, in January, 1835, a few months before the' death of the testator, without his privity or direction, and that she was now sorry for it, and wished it to be set up and established; and she exhibits with her answer a release of all claim or interest under its pro- , visions.
Rejection of dep ositions,. and decree.
The statute re--quiring the ques • tion of will or no will, to be tried by jury in certain cases,applies only where a bill in ch’y is filed contesting the validity of a will after it has been admitted to record in the co. court: not whore the object is to set up a will that has been destroyed.
Chancery has jurisdiction to establish a will that is lost or destroyed.
Questions.
The will in this-case was duly ex ecuted.
The other heirs, except Mrs. Feny, answer, controverting the allegations of the bill, and allege that if a will were made by the decedent, it was at a time when he was wholly incompetent to make disposition of his estate by will; and that if destroyed, it was destroyed by his direction.
The Chancellor, upon the hearing, having rejected the depositions of three of the witnesses, dismissed the complainants’ bill; and they have brought the case to this Court.
It is objected, on the one side, that the bill should not have been dismissed without submitting an issue to a jury, to inquire of the facts, as directed by the statute; and. on the other side, that the Chancellor had no jurisdiction.
Neither of these objections can prevail.
The statute applies only to cases where a will ha’s been recorded in the County Court, and a bill shall be filed contesting its validity. Theii an issue shall be made up and submitted to a jury; but not when a bill is filed which seeks to set up a will which is alleged to have been destroyed. Nor can it be questioned that the Chancellor has jurisdiction in cases of a suppression or destruction of a will.
On the meirts the following questions arise: First— did the testator make a will? Second — was he of deposing mind and memory when he made it? Third— was said will destroyed without his knowledge, privity or consent? And, fourth — are the- provisions of the will sufficiently made out, to authorize a chancellor to set them up?
The proof is unquestionable, that a will was made in the summer of 1825, and executed and published in all *92 the forms and solemnities required by the statute. Nor can we doubt that the testator was of disposing mind and memory. Though there is about an equal array of witnesses on each side of this latter question, those in favor of the will had a better opportunity of knowing the capacity of the decedent, and many of them detail . , v , , ,. , , „ circumstances and transactions with him, which, if true, Can leave no rational doubt of his capacity; and among • 1 . . ° them are to be round the three subscribing witnesses to the —one 0f them being the draftsman — who were called around his person for the purpose, and whose at-tent*ons niust be regarded as more specially directed to the testator’s condition and capacity than other casual observers, who were not confided in, and had nothing to • fix their attention; or call back their recollections to time, place and circumstance.
The namber of witnesses for and against the competency of a testator, being equal —because those in favor, inclnd-ing the subsonb-had better means of judgingo"f the testator’s condi-ishi’ favorof the will.
The mere fact that a witness in chancery is a par ty to the suit, does not disqualify him; but if he is interested in the matter as to which he. testifies, or may be liable for costs, his deposition must be rejected. The object ofthe suit was to estab Jish a will which
The testator, it is true, was a drinking man, and was at times very intemperate; and when in his cups, no doubt, exhibited marks of imbecility and childishness; and if seen by persons when in that situation, they might have well concluded that he was wholly incompetent to transact his own business, or to make a rational .will. And so their testimony may be reconciled, and ' stand with the testimony of others, wTho knew him better, and saw, and had transactions of importance with him, when sober.
And we cannot doubt but that he was duly sober when the will was made. Not only the subscribing witnesses establish the fact, but others in whose testimony we are bound to confide. ‘ ‘ •
Before disposing of the third question, it will be first necessary to determine whether the depositions of two of the witnesses were properly rejected, by the Chancellor, as those depositons bear specially upon the question.
One reason alleged for their rejection is not sustained, namely, that they were parties — defendants to the suit. That objection alone is not' sufficient, as has been heretofore settled by this Court.
White’s deposition, taken in' behalf of his co-defendants, was properly rejected. He answered the bill, *93 and resisted the establishment of the will, as the husband of one of the heirs. And though she has died, he is still liable for the costs, and may be made to pay them in case the will is sustained. And though he may not be interested to a greater extent, which is not necessary to inquire into, he is interested to the extent of the costs.
thé wife of the testator had destroyed, in his life time : she being a def’t, answered, admitting fya. and desiring that the will should be established , and filed a release ¡t: held, that she is. a competent witness in support of the will. That tllere was some altercation between parties- and 'awyers, as to what was stated by a witness, ana £*e.was occasionally inter ruptedonthatac-f^^deposftion'" is not sufficient fn°U;t — the ptoof showing that she ^afromPmaking ful1 and fair state were properly ^et o°Jonia the dei> if a witness un-J^^ted to^df rected, or lead, it for Rejecting ^ deposition. But, toretakeTshould be allowed; a re irceptimoTtaken* and a simuitane-*e deposition
As to Mrs. Allison, the widow of the decedent, she cannot be affected, whether the will prevails or not, in as much as she has released all claim under it, and is entitled, in any event, to the provision which the law maxes for her. fehe was therefore competent to be examined for the complainants, if no other objection lies , . 1 . . , to her testimony. Another is assigned by the Chancellor: the interruption and interference of one of the ... , , ' . . _ complainants, when she was under examination. It seems from the testimony of a witness who was present, , . T , , , . „ , r . that the counsel on both sides and some of the parties were present, and there was some contest between- the r . , counsel occasionally, as to the precise statement of the witness, of what should be put down by the justice, and that one of the complainants on one occasion, when the witness stated that there was a copy of the will, stated that she was mistaken, that there was no copy— when she replied she thought there was. Some other interruptions took place, when the counsel for the defendants appealed to the justice, and there was no further attempt — the complainants stating that the defendants were interfering, and they did not know that it was wrong, but promised to desist,, and did so. The same witness states that he thinks the deposition fair and full, and that the statements were taken down- substantially as spoken.
It is certainly improper for parties or counsel to lead or direct witnesses when under examination, or to die-tate to them. And the dictation might be ^uch, as to warrant the suppression of ihe whole deposition.
But we cannot-believe that the interruption plained of, was such as to justify the suppression of the deposition in question. And if it were, it was certainly not sufficient to justify its suppression on the hearing, *94 without giving leave to retake it, when it was not excepted to by the counsel for the defendants, rendering a final decree at the same time against the party in whose favor it was taken. Such a practice was rigid and harsh, and we are persuaded would not have been indulged in by the Chancellor, but for the other reason suggested by him, for its suppression.
It requires the same capacity to revoke a will, as to make one:— so, where a com petent testator makes a will, and the paper is after wards destroyed by his consent, given when he had become non compos, the devi ses are not destroyed : the will may _ be set up and established in chancery.
The destiuction of a will by the consent of the tes tator, against his wish and desire, should not be deemed a revocation -especially , when it was done long af terwards at the discretion of the person to whom the consent was given.
This deposition being admitted, it is rendered clear by it, that the will was destroyed by the witness, in January, 1835, a few months before the death of the testator, and without his knowledge. And that, if he had been apprised of it, it appears clear, from the testimony of this witness and others, at the time of its destruction, and for two years or more before, he was entirely incompetent to make a will, or to exercise judgment and discretion in the revocation of a will that had been made. And it cannot be doubted that the act of revocation, by cancelment or otherwise, requires mind, j udgment and discretion, as well as the act of making a will. So that had the testator sanctioned the act of cancelment, or had it been done under his direction, he was wholly incompetent to give such direction, from his then mental imbecility and incapacity to take a general and rational survey of his estate, of his children, and their claims upon him, and of the consequences of the act, as would render the revocation valid. And though it should be inferred from an imperfect and rather unintelligible statement in the deposition, that on one occasion, before the will was destroyed, he stated, in reference to the will and its destruction, that she, the witness, might do as she pleased, but that he would not destroy it: that statement was made, if made at all, when he was drinking and excited with one of his sons, for concealing the bottle from him; and had he been sober, it does not appear that it was not made, during the pei'iod of his imbecility, and when he was incompetent to make a valid revocation. And if it did, we could scarcely believe that a general authority to another to destroy it, implying an opposition of his own will to the act, would be sufficient to justify the cancelment, made at a remote period, upon the exercise of the *95 will and discretion of the agent, without further sanction, knowledge or direction on the part of the the testator.
Where awill that has been destroy , ed is set up, if the substance of the devises are proved, it is suffi cient, without a precise statement of the language or terms of the will.
In any aspect, in which the case' can be viewed, if this witness is to be credited, we can come to no other conclusion than that the will was made in due form, and that it is not shown to have been revoked or cancelled by the act or mind of the testator; but, on the contrary, was destroyed by another without his knowledge or consent.
And we have as little doubt that the witness is entitled to credit, and her statement is substantially true, as well from her unimpeachable character — which the witnesses on both sides all concur .in proving — as from the manner and simplicity of her detail, and the reasons given for the facts detailed.
In relation to the provisions of the will, we have as little doubt that they are substantially made out by the proof, as alleged in the bill. Nor is there any just ground to object to the proof because the witnesses have not given the language of the will, or the substance thereof. They have given the substance of the different devises, as to the property or interest devised, and to whom devised. And we would not stop, in the case of a destroyed will, to scan with rigid scrutiny, the form of the proof, provided we are satisfied of the substance of its provisions.
It is, therefore, .the opinion of the Court, that the decree of the Chancellor be reversed, and cause remanded, that the will and the provisions thereof, as set out in the complainants’ bill, except as to the widow’s interest, which has been released, be set up and established; and such steps taken by the Chancellor, to effectuate its objects, as is consistent with equity, and not repugnant to this opinion.