EDMUND C. PRESTON *v.* HENRY C. PRESTON
ET AL.

*Lost Will—Evidence to Establish—Revocation By Subsequent
Will—Mental Capacity.*

When offers of evidence were in proper form, objections thereto necessarily conceded the facts embodied in them, but denied their relevancy and materiality.                    p. 505

The destruction of a will by the testatrix does not amount to a revocation thereof, unless she is at the time mentally capable of understanding the nature and effect of her act.          p. 505

The same mental capacity is required to revoke a will as to make one.                                              p. 505

To prove a lost will, it must be shown by clear and convincing proof that the will was executed in accordance with the statutory requirements, and in the absence of a statute requiring other or different proof, this may be shown by the testimony of the subscribing witnesses, or, where their absence is satisfactorily accounted for, by other competent evidence.          p. 508

The purpose of the statutory provisions as to the execution of wills is the prevention of fraud, and consequently, where it can be done without violence to its express terms, the statute should be so construed as to prevent fraud upon the testator, and not to aid or promote it.                     p. 508

The contents and execution of a lost will may be established by the testimony of a single witness.                  pp. 509-512

The testimony of the draftsman of a will as to its due execution in the presence of two attesting and subscribing witnesses, while not ordinarily sufficient to justify its probate, if such witness is unable to recall the names of the subscribing witnesses or even the approximate date of the will, *held* under the special circumstances to be sufficient *prima facie* proof of its existence as a valid testamentary instrument, it appearing that the defect in proof was due to the fraudulent destruction or

concealment of the instrument by the beneficiaries under another
conflicting will.                                      p. 512

Testimony of persons who were the principal beneficiaries
under another will, that testatrix, then in their sole care and
custody, while paralyzed and mentally incompetent, tore a pre-
vious will in pieces so small that they could not be placed to-
gether so as to be legible, *held* not to establish conclusively the
destruction of the paper by testatrix, it being rather inferrible
that these persons secreted or destroyed it for their own purposes.
                                                 pp. 512, 513

It is sufficient that the proponent of a lost will shows the sub-
stance and intent of the instrument definitely and affirmatively
by clear and convincing proof, and its probate cannot be defeated
by reason of his failure to prove some relatively small, incon-
siderable, and unimportant items.                     pp. 513-518

Where one's right to contest a will and codicil depended on
the validity of a prior will, in which he was the principal bene-
ficiary, and on the fact that that will was not revoked by the
later will and codicil because they were invalid, it was error to
refuse to admit in evidence the earlier will, in connection with
an offer to show that when it was made testatrix was mentally
capable, and that she was incapable at the time of the making of
the later will and codicil.                            p. 518

One of the issues being whether testatrix had ever revoked a
will made by her, it was proper to show what she said and did
with respect to it, at or about the time she was said to have
revoked it by making a later will.                    p. 519

There being sufficient independent evidence of the existence
and execution of a will, said to have been destroyed, to warrant
the submission of those questions to the jury, corroborative evi-
dence was admissible to show the relations between testatrix and
an alleged beneficiary under that will, and her declarations as
to her affection for him, and her intention to leave her property
to him, acknowledging the execution of the will, and showing
her knowledge of its contents.                        p. 519

On an issue as to whether a previous will was revoked by a
later one, such later will, and the circumstances surrounding its
execution, such as the mental and physical condition of testatrix,
her ability to speak or signify her wishes, and her relations with

the beneficiaries of the later will, were admissible, as was a substantially similar will executed two months earlier.          p. 520

On an issue as to the revocation of a will by its destruction at the time that testatrix made a new will, evidence that she was at that time of unsound mind and incapable of executing a valid deed or contract was admissible.                                  p. 521

*Decided January 14th, 1926.*

Appeal from the Circuit Court for Harford County (HARLAN, J.).

Caveat proceeding by Edmund C. Preston as regards an alleged will of E. Estelle Moore, deceased, which was answered by Henry C. Preston, executor, and Ella R. Rohrbaugh, joint residuary legatee, under said alleged will. From rulings in favor of the caveatees, the caveator appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, ADKINS, URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Stevenson A. Williams* and *Shirley Carter,* with whom were *Philip H. Close* and *Fred R. Williams* on the brief, for the appellant.

*Thomas Burling Hull* and *C. Arthur Eby,* with whom was *Edwin W. H. Harlan* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Mrs. E. Estelle Moore, for many years a resident of Harford County, Maryland, died there on May 4th, 1925, without heirs or next of kin, but leaving a paper writing purporting to be her last will and testament, dated November 5th, 1923, and a supposed codicil thereto, dated November 8th, 1923, which were, on May 7th, 1924, offered for probate in the Orphans' Court of Harford County by Henry C. Preston, the executor and one of the residuary legatees named

therein, and also the custodian thereof. Thereafter, on May 13th, 1924, Edmund C. Preston filed a caveat to that supposed will and codicil, in which he stated that he had an interest in the estate and property of the decedent under a former will, executed by her in 1919, in which she had devised and bequeathed to him the residuum of her estate, and that the supposed will and codicil executed by the decedent in November, 1923, were not duly executed, that they were not executed when the decedent was of sound and disposing mind and capable of executing a valid deed or contract, and that they were procured by undue influence exerted and practiced upon her. Henry C. Preston, the executor, with Ella R. Rohrbaugh, joint residuary legatee, under the alleged will and codicil of November, 1923, answering that caveat, alleged (1) that the caveator had no interest in the estate, because, (a) no will of 1919 ever existed, or (b) if it ever did exist it had been revoked by the decedent prior to her death, and (2) that the alleged will and codicil of November, 1923, were in truth and in fact the last will and testament and codicil of the deceased, duly executed by her when she was of sound and disposing mind, and capable of executing a valid deed or contract, and that they had not been procured by undue influence exerted and practiced upon her. Thereafter, on March 3rd, 1925, an issue was framed in the Orphans' Court of Harford County in the following form: "Did E. Estelle Moore leave a duly executed paper writing purporting to be her last will and testament, dated on or about the           day of           in the year 1919, whereby she bequeathed the rest and residue of her estate to Edmund C. Preston"? Subsequently, Miss Rohrbaugh on her petition was permitted by the Orphans' Court of Harford County to intervene as a party defendant, and to file an answer to the caveat, in which she alleged, first, that the caveator had no interest in the estate because he was not an heir or next of kin, and there was no valid outstanding existing will in which he was named as a legatee or beneficiary, and that she was entitled to have that issue disposed of before entering upon any defense of the will

and codicil of November, 1923. The issue was accordingly sent to the Circuit Court for Harford County, where it was tried by a jury. At the conclusion of the caveator's case, the court directed a verdict for the defendants, which the jury in due course returned. Whereupon the plaintiff appealed from certain rulings, twenty-three in number, made by the court in the trial of that case.

The salient questions presented by the appeal are these: (1) May a will which has been lost or destroyed be admitted to probate upon anything less than clear and convincing proof of its entire, literal and verbatim contents? (2) Can the due execution of such a will be shown by proof which fails to disclose the names of the attesting witnesses or the precise date of its execution? And those questions grow out of these facts, which, in the form the record comes to this Court, must be regarded as conceded for the purpose of this inquiry by the appellees.

Neither the caveator nor the caveatees were in any manner related by blood or by affinity to the decedent. Edmund C. Preston, the caveator, she had known ever since he "could remember," and she knew Henry C. Preston and Ella C. Rohrbaugh certainly after March, 1922, although the record contains nothing to indicate definitely that she knew them before that time.

She lived at Fallston, Harford County, for many years prior to her death, which occurred, as we have stated, in 1924. There is no statement as to her exact age, although in a letter dated June 15th, 1921, she speaks of that day as her forty-fifth wedding anniversary. Edmund C. Preston is a son of Edmund Preston, Jr., who was originally from Fallston, but is now in business in Philadelphia, and who at one time appears to have lived in Mrs. Moore's neighborhood. In 1909, for some reason not disclosed by the record, the appellant went to live with her, and continued to live with her until 1917, when he left to train, presumably for service in France, where he remained for some twenty months. After his return, in the spring of

1919, he at once called on Mrs. Moore, and later he went to Philadelphia, where he engaged in business, although he corresponded regularly with her from the autumn of 1920 to March, 1922, when she had a stroke of paralysis and wrote no more. A number of the letters which she wrote to him and to his wife after he went to Philadelphia unconsciously draw a picture of a kindly, cultured and affectionate woman, who, notwithstanding advancing years, took a keen, penetrating and benevolent interest in the life about her, and who was devotedly attached to the appellant and his wife.

In 1919 she sent for Mr. Noble Mitchell, for many years a member of the Harford County Bar and instructed him to draw for her a will leaving her estate, with the exception of a few legacies, to the appellant. The will was drawn and duly executed, and some time after that she told appellant what she had done.

After Mrs. Moore was stricken with paralysis in 1922, she was quite helpless physically, and mentally her condition was that of a little child, and at no time thereafter was she of sound and disposing mind, memory, and understanding, or capable of executing a valid deed or contract. Shortly after she was stricken, Henry C. Preston and Ella R. Rohrbaugh came into her home as nurses, and remained there until her death, and at some time after their appearance there Mrs. Moore executed a power of attorney to Preston to look after her affairs, which continued in force until she died. In September, 1923, Mr. Mitchell was informed by Henry C. Preston that Mrs. Moore wanted to change her will, and he accordingly called on her, taking with him the will of 1919. He found her in bed and at that time "he had in his hand the so-called will of 1919, and he went over each item of that will and asked Mrs. Moore if she desired to retain that item, to which question she either nodded assent or disapproval; that accordingly these specific legacies were retained or omitted as she thus indicated; that he was informed that she desired to change the residuary clause of her will so as to leave the residuum of her estate to Miss

Ella R. Rohrbaugh and Mr. Henry C. Preston; that he
was told this by Mr. Preston. He then asked Mrs. Moore
if she desired to make that change and she nodded assent;
that he then returned home; that before receiving instruc-
tions from Mrs. Moore about the changes in her will, Mr.
Preston had said to him that he didn't think Miss Ella
(meaning Miss Rohrbaugh) should have it all; that he then
went home and drew up a new will at his office, and after a
day or two returned with the new will to be executed; that
as an attorney he saw that it was read over to her and ex-
plained to Mrs. Moore; and she executed the same in the
presence of Mr. George E. Silver, who has since died, and
Mr. George T. Archer; that either before the execution of
that will that day or afterwards he saw Mr. Preston and
told him that the residuum was fixed so she didn't get it
all.

After the execution of that will, September 25th, 1923,
the 1919 will was delivered to Mrs. Moore, and she destroyed
it in a manner which can best be described in the language
of Miss Rohrbaugh, who said in part: "What became of
that paper? Mrs. Moore destroyed it. In your presence?
Partly—she tore it and then afterwards threw it into the
open hearth. When was that? It was in the afternoon
that Mr. Mitchell delivered it to her and then she tore it.
The following morning, when we put her in her wheel chair,
she took it in her lap and then threw it into the open hearth.
How did she tear it? She put her hands on it this way
(indicating), and tore it in small pieces with her left hand.
* * * Did you and Mr. Preston ever attempt to put those
pieces together? We could not—it was torn too badly. Did
you ever attempt to put them together? I could not. Did
you try to put them together? It was torn up too badly.
Didn't you try to put it together? We opened it up and
tried, but we could do nothing because it was too badly
torn—the pieces were too small. Then you did try to put
it together? Yes, sir, but we couldn't see anything about it.
Did you read it before it was torn up? No, sir—I did not

see it until it was in pieces." The September, 1923, will, after it was executed, was committed to Mr. Mitchell's custody, where it has since remained. Under that will Mr. Mitchell was named executor, but on November 5th, 1923, the decedent executed still another will, from which was omitted a legacy to Mitchell, and in which Preston was substituted for him as executor. And on November 8th, 1923, a codicil to that will was executed in which certain furniture and her jewelry (except a pin bequeathed to Ginnis Lee Gibson) was bequeathed to Miss Rohrbaugh.

We have assumed the existence of these facts, for while, with the exception of the testimony of Miss Rohrbaugh, who testified to the destruction of the will of 1919, and a part of the testimony of Mr. Mitchell, who drew the wills of 1919 and September, 1923, no witness testified to them, nevertheless they were embodied in offers made by the appellant, which the court overruled. And since the offers were in proper form, the objections to them necessarily conceded the facts embodied in them, but denied their relevancy and materiality. The learned and able judge, who presided at the trial of the case in the lower court, can only have excluded the evidence offered on the ground that no lost or destroyed will could be admitted to probate in the absence of anything less than clear and convincing proof of its entire literal and verbatim contents, or that its execution could not be shown unless the precise date of its execution were proved, as well as the names of the attesting witnesses. So that the case turns upon the soundness of those propositons.

Before dealing with them, however, it may be stated, by way of preface, that the destruction by the testatrix of the will of 1919 did not amount to a revocation thereof, unless she was at the time mentally capable of understanding the nature and effect of her act (*Alexander on Wills,* vol. 1, par. 518; *Rhodes v. Vinson,* 9 G. 169), and that the same mental capacity is required to revoke a will as to make one. *Alexander on Wills, supra.*

In natural order the first question to be considered is the

execution of the will of 1919. The evidence in respect to
that is rather brief, and in order to clearly understand the
issues it may be well to state it. Mr. Noble L. Mitchell, the
attorney who drew it, said: It was drawn in his office in
Bel Air. He received instructions from the testatrix, Mrs.
Moore, herself, who was in the best state of health at the
time. She was then living at Mosswood near Fallston, the
old Moore home place. After the will was executed, witness
had the custody of it from the date of its execution until one
day in September, 1923. It was executed in his office
before two witnesses. He does not remember their names.
In the month of September, 1923, witness received informa-
tion from Mr. Henry C. Preston that Mrs. Moore wanted
to change her will, and he went to see Mrs. Moore and saw
her. Further testifying to the execution of the 1919 will,
he said: "Q. I think you said there were two witnesses?
A. Yes, sir. Q. Will you tell us what was done at the time
of the execution of that will,—what was done and said by
Mrs. Moore, you or the witnesses? A. I said to the wit-
nesses, in the presence of Mrs. Moore, that this was her last
will and testament. Then I said to Mrs. Moore, 'Is this
your last will and testament, and do you wish these gentle-
men to witness it?' and she said, 'Yes.' Q. Was her signa-
ture made in the presence of the others? A. Yes, sir. Q.
They were in the room and saw her sign it, and she saw them
sign it? A. Yes, sir,—it was properly executed." He fur-
ther said that when he went to see her in September, 1923,
he was told by Mr. Henry C. Preston that she wanted to
change her will, and appellant offered to prove that he took
with him on that occasion the 1919 will and went over each
item of it with her and, while the record is not clear, it may
be inferred that he finally left it with her.

Miss Rohrbaugh testified that Mrs. Moore took the paper
Mr. Mitchell left with her and tore it into small pieces with
her left hand, and threw the pieces in the open hearth, and
that, although the witness and Preston attempted to put the
pieces together to read them, they did not succeed because

the pieces were too small. In connection with that testimony the proffered testimony of her attending physicians as to Mrs. Moore's mental and physical condition at the time she is said by Miss Rohrbaugh to have destroyed the 1919 will should be considered. The appellant offered to prove by Dr. George H. Hocking that he was called to attend Mrs. Moore immediately after she was stricken in March, 1922; that she had complete paralysis of one side and she had entirely lost the power of speech, which she never recovered; that in effect this made Mrs. Moore a child of tender years; that he saw her frequently for six months after she was stricken, when he went abroad and was absent for two months; that upon his return he saw her less frequently and at these visits he noticed that her condition was as bad as it was in the beginning,—there being no improvement; that in the opinion of the witness, Mrs. Moore was not of sound and disposing mind, memory and understanding after her stroke and was not capable of executing a valid deed or contract. And he further offered the testimony of Dr. Wm. H. Stirling, Dr. J. F. H. Gorsuch and Henry J. Watson in corroboration of that of Dr. Hocking.

The testimony and the offers together therefore showed (1) that the attorney who drew the will, but who was not an attesting witness, testified that it was duly executed in accordance with the requirements of section 332, article 93, Bagby's Code, but that he could not remember the names of the attesting witnesses, or the precise date of the will; (2) that he left the 1919 will with Mrs. Moore in September, 1923, when she was completely paralyzed in her left side, and mentally incapable of executing a valid will; (3) that the 1919 will disappeared after that and Miss Rohrbaugh, her attending nurse and one of her residuary legatees, explained the disappearance by saying that Mrs. Moore, notwithstanding her physical condition, tore it into pieces too small to be pieced together so as to make the mutilated will legible.

The law as to what may be considered sufficient proof of the execution of a lost or destroyed will is neither uniform nor clear. A number, if not all, of the cases dealing with the question are collected in 38 *L. R. A.* 441, etc., and 34 *A. L. R.* 1308. So far as any general rule may be deduced from those cases, it is this, (1) that it must be shown by clear and convincing proof that the lost will was executed in compliance with the requirements of the statute prescribing the manner in which testamentary instruments shall be signed, published, acknowledged and attested. (2) That, in the absence of any statute requiring other or different proof, those acts may be shown by the testimony of the subscribing witnesses, or, where their absence is satisfactorily accounted for, by other competent evidence. On those general principles the cases seem to be in substantial accord, and this court has gone at least so far as that. *Hall v. Gittings,* 2 H. & J. 112; *Hale v. Monroe,* 28 Md. 113. But difficulty arises where it is sought to prove the will by testimony of less value, as for instance by a single witness who was not an attesting witness, where the subscribing witnesses are not positively shown to be unavailable.

In attempting to formulate some rational rule in respect to such a case, consistent with the principles which, as we have stated, appear to be supported by the weight of authority, some assistance may be had by resorting to the purpose and reason of the statutory requirements relating to the execution of wills. It may be said at the outset that the principal underlying reason is the prevention of fraud, and this is, we think, sufficiently indicated by the language of the titles to 29 *Car.* II and 6 *George* II. And it is obvious enough that the purpose of the statutes was to invest the execution of testamentary instruments with such formalities and publicity as would be most likely to protect the testator and the heirs against fraud and imposition. For that reason, where it can be done without violence to its express terms, the statute should be so construed as to prevent fraud upon the testator, and not to aid or promote it, and the

courts have frequently, and we think properly, been influenced by that consideration, in applying statutes relating to the probate of wills to the facts involved in cases before them.

One of the early cases on the subject was that of *The Goods of Gardner*, 1 Sw. & Tr. 109, where it was held that on the following facts a will was properly probated: "A made his will in 1855. In May, 1857, when the Indian Mutiny broke out, he escaped from Delhi, leaving his will, among other property, behind him; he died at Kussowlee in June, 1857. On the affidavit of one of the attesting witnesses as to due execution, and of the same witness and of his widow as to the contents, probate was granted to the widow, as sole executrix." Prior to that case, however, in *Graham v. O'Fallon*, 4 Mo. 608, the court said: "The only remaining point is, whether one witness is not by law, sufficient to establish the contents of a lost will? I am not aware that there are any but two cases at common law, where more than one witness is required to establish a fact. The one is, in case of treason, and the other in chancery, where the defendant denies by his answer on oath, the matter of the bill, two witnesses are required to overturn the answer. * * * It is because it is said to be the rule by the civil law in the ecclesiastical courts of England, and because this court in the case of *Graham et al. v. O'Fallon*, 3 Mo. 511, have cited the rule, as found in *Toller*, page 71. But the counsel are greatly mistaken when they suppose the court meant to decide that two witnesses were absolutely necessary to establish the contents of a lost will."

The principle stated in these cases has since been restated and applied in cases both in this country and in England, among which cases are *Dan v. Brown*, 4 Cow. 483, where it was said: "The will of Benajah Brown was proved by one of the subscribing witnesses. He stated that it was executed in the presence of himself, James Mallory, and another person, whose name he did not recollect; but he had no doubt of his being a credible witness. This was all the evidence

that could be expected under the circumstances of the case. It was *prima facie* sufficient. In the case of *Hands v. James,* Com. 531, where all the witnesses were dead, it was submitted to the jury, to determine whether the witnesses to the will set their names in the presence of the testator merely upon the circumstances without any positive proof; upon the ground that there could not probably be any express proof, as few are usually present besides the devisor and witnesses, and from the nature of the case, the proof must be circumstantial. It was observed that three witnesses had set their names; and it must be intended that they did it regularly; that one witness was an attorney of good character, and may be presumed to understand what ought to be done rather than the contrary. Here the attorney drew the will, subscribed it as a witness, and testifies to everything but the name of the third witness. It seems to me, that from this, the presumption of due execution is irresistible"; *Thorman's Estate,* 162 Iowa, 237, where it was said: "Though the execution and contents of a lost will may be established by evidence of one witness, they must be clearly and satisfactorily proven. *Tynan v. Paschal,* 27 Tex. 286, 84 Am. Dec. 619; *Matter of Page,* 118 Ill. 576, 8 N. E. 852, 59 Am. Rep. 395; *Graham v. Birch,* 47 Minn. 171, 49 N. W. 697, 28 Am. St. Rep. 339"; *Tynan v. Paschal,* 27 Tex. 286, where the court, after reviewing the authorities, said: "These authorities justify the conclusion that to establish the validity of a lost will, it is necessary to prove its execution with the formalities and solemnities prescribed by the statute; and it should be done by direct testimony, or legally deducible from such facts as are directly established. And while recourse is to be had, primarily, to the statutory rules governing the probate of wills, yet other testimony may be used to aid or supply the deficiencies of memory of the attesting witnesses; or when direct testimony cannot be had, or the facts of the case take it without the statutory rule, resort may be had in the first instance to such as may be accessible and pertinent to the issue to be determined"; *Page*

*v. Maxwell,* 118 Ill. 576, where the execution of the will was proved by the scrivener, who was also an attesting witness. And in *Underhill on Wills,* par. 276, it is stated as a general rule that: "It is well settled that, in the absence of statute prescribing a different mode or requiring a higher degree of proof, a lost will may be established by the testimony of a single witness showing its execution and contents, though he claims under it and had himself destroyed it under a mistaken impression as to its nature. And this is the rule where subscribing witnesses cannot be produced, though the statute requires the evidence of two such witnesses at the probate."

Our attention has been called to no case in this state which can be said to deny the rule as thus stated, but on the contrary both the cases and the statute appear to support it in the form which we have stated it, although they do not wholly approve the rule as stated in *Underhill on Wills, supra.* In *Hale v. Monroe,* 28 Md. 112, there was no proof of any kind that the will had been attested by the required number of witnesses; in *Tinnan v. Fitzpatrick,* 120 Md. 350, the court refused to probate a will, where the proof failed to show that it was attested and subscribed in the presence of the testator by two witnesses, and where it affirmatively appeared that the executor named in the supposed will withheld it from probate for eleven years, during which period both the attesting witnesses died; while article 93, section 363, Bagby's Code, which provides: "If any witness or witnesses to any will shall die before probate thereof, or if at the time of the probate of any will any witness or witnesses shall be non-residents or beyond the jurisdiction of the orphans' court, or if for any other reason their presence cannot be secured, then proof by any credible witness of the signature of the testator or of the signature of any such deceased or absent witness shall have the same effect upon the probate of said will as if said deceased or absent witness had been present at said probate and had testified that said will was duly executed," is in accord with it.     But

even if we took the rule as stated in *Underhill on Wills,
supra,* and in the cases cited, broad as it is, as a fair
statement of the law, we would be reluctant to hold that it
would justify the probate of the will under the facts of this
case, but for the circumstances under which it was destroyed
or secreted, because in our opinion the statement even of the
draftsman of the will, that it was duly executed, signed
by the testatrix, and acknowledged by her in the presence
of two witnesses who, at her request in her presence and in
the presence of each other attested and subscribed it, would
not be sufficient, where the witness was unable to recall the
names of the subscribing witnesses or even the approximate
date of the will. But when it is considered that it may be
inferred from the evidence actually given or offered, that
that defect in proof was due to the fraud of the appellees in
destroying or concealing the paper, we are of the opinion
that the testimony given or offered as to the execution of the
will of 1919 was sufficient *prima facie* proof of its existence
as a valid testamentary instrument.

That the evidence if true justifies that inference we have
no doubt. Without repeating it in detail, it is sufficient to
say that the mere statement of an interested witness, that a
paralytic, mentally incompetent, physically feeble, and en-
tirely without the use of one side of her body, tore the
paper in pieces so small that they could not be placed to-
gether so as to be legible, did not conclusively establish the
fact of the physical destruction by the testatrix of the paper
left in her possession, at a time when she was in the sole
care and custody of the appellees. And when those facts
are taken in connection with the further fact that under
the wills of September and November, 1923, they were the
principal beneficiaries, it may be inferred that they secreted
or destroyed the will of 1919 for their own purposes. Under
such circumstances the language of the court in *Re Lambie's
Estate,* 97 Mich. 55, is peculiarly apposite: "The evidence
in the case falls short of establishing the existence of such
a writing, except as it may be presumed, under the maxim,

'*Omnia praesumuntur in odium spoliatoris.*' There was evidence tending to show that the second will of Anne Lambie was in the possession of Francis Lambie, and that it came to the hands of the proponents, warranting the inference that it has been suppressed or destroyed. If from this evidence the jury found such paper destroyed, the law permits the presumption that it was legally drawn and executed, notwithstanding the terms of the statute, which requires the revoking instrument to be formally executed. If a will be lost, secondary evidence may be given of its contents; if suppressed or destroyed, the same is true; and, if necessary, the law will prevent the perpetration of a fraud by permitting a presumption to supply the suppressed proof. We cannot assent to the proposition that the statute is so rigid as to be the wrongdoer's most effective weapon. The misconduct once established to the satisfaction of the jury, it is no hardship to the wrongdoer to say, 'Produce the evidence in your possession, or we will presume that your opponent's contention is true.' When one deliberately destroys, or purposely induces another to destroy, a written instrument of any kind, and the contents of such instrument subsequently become a matter of judicial inquiry between the spoliator and an innocent party, the latter will not be required to make strict proof of the contents of such instrument in order to establish a right found thereon. *Broom, Leg. Max.* 576."

The second question is whether a lost or destroyed will can be proved by proof of anything less than its entire, verbatim and literal contents. To hold that it cannot would be practically to hold that no lost will could ever be proved unless there were in existence an exact copy of it. Because when the frailty, fallibility and vagaries of the human memory are considered, it is so improbable that witnesses could be found who could, after the lapse of any considerable period of time, recall exactly and in the same words the contents of such a paper, it would seldom happen that such a will could be proved. But while the law jealously guards

the integrity of wills, and takes cognizance of the frailties of human nature, which make it necessary to exercise every precaution to guard the testator and his heirs against fraud, nevertheless a rule so rigid and so strict would tend rather to encourage the fraudulent suppression or spoliation of wills than to carry out the wishes and intent of the testator. Such a rule is, we think, inconsistent with a sound public policy and unwise, and in our opinion it is sufficient if the proponent of the lost will shows definitely and affirmatively by clear and convincing proof the substance and intent of the instrument, and we do not think that its probate can be defeated by his failure to prove some relatively small, inconsiderable, and unimportant item.

But the appellees contend that the cases of *Rhodes v. Vinson,* 9 Gill, 169, and *Hoppe v. Byers,* 60 Md. 381, are in conflict with that view. In *Rhodes v. Vinson, supra,* the phrase upon which the appellees reply is this: "We think this case furnishes a clear illustration of the soundness of that policy, which requires that the proof of the entire contents should be conclusive and satisfactory; and the authorities on this question all hold this doctrine." But that was an appeal from the orphans' court and this Court was itself weighing the evidence, and not passing upon its legal sufficiency, and it refused to probate the will because no two witnesses agreed upon the entire contents thereof. All the witnesses affirmed that their recollection was indistinct and imperfect, and "the proof of the contents of the instrument" was vague and uncertain. So that while the Court referred to a "policy" which required proof of the "entire" contents of the will, and asserted that that policy was supported by "all the authorities," it did not place its decision on that ground, and it could not have intended that the word "entire" should have the narrow and literal meaning for which the appellees contend, because neither at that time nor since have all the authorities or even the weight of authority supported any such policy. And the learned judge who wrote that opinion of course knew that, and manifestly

intended it to mean "complete omitting no essential part," and it appears to have been understood in that sense by this Court in *Colvin v. Warford,* 20 Md. 393, where the court speaks of the "contents" of a will without the qualifying word "entire," and says: "The objection that the appellees were not entitled to set up the will of 1847, as a revocation of the will of 1845, because its contents were not proved with sufficient certainty to have effect as a devising will, in our opinion cannot be sustained. * * * Even disregarding the legal consequences of the destruction of this will, it is settled that a will, valid in all its essential parts, but inoperative from other circumstances, may, nevertheless, have the effect of revoking a previous will"; in *Tinnan v. Fitzpatrick,* 120 Md. 350, where it is said: "Can there be a doubt, that in cases like the present, where the object is to establish the contents of a paper which has been destroyed, as and for a last will, that policy does require the contents of such paper to be established by the clearest, the most conclusive and satisfactory proof? We think not." That it was so meant is apparent from an examination of the cases decided prior to 1850, when *Rhodes v. Vinson* was decided.

In 1823, in *Foster v. Foster,* 1 Add. Ecc. Rep. 468, Sir John Nicholl said: "And the Court being satisfied—first, that these instruments have ceased to exist (to exist, that is, in their integral state) only under the circumstances just described—but that, secondly, the true tenor and effect at least, of these, though not all the very words, are still before it in papers C and D—under these circumstances, it is no less its duty to pronounce for papers C and D, than it would have been to have pronounced for the original instruments themselves, if total and entire." In 1838, in *Allison v. Allison's Heirs,* 7 Dana (Ky.), 95, it is said: "Nor is there any just ground to object to the proof because the witnesses have not given the language of the will, or the substance thereof. They have given the substance of the different devises, as to the property or interest devised, and to whom devised. And we would not stop, in the case of a destroyed

will, to scan with rigid scrutiny the form of the proof, provided we are satisfied of the substance of its provision," and in 5 B. Mon. 72, decided in 1844, it was said: "And as the principal devises, those in which the testator took deepest interest, and about which he showed most solicitude, are sufficiently proved, the failure of proof as to the minor provisions of the will should not defeat the whole by preventing the admission to record, of that which is proved; and especially as it does not appear that the establishment of the devises as proved, though it would greatly reduce the fund to be distributed, will affect the relative proportions which the heirs will receive, since Mrs. Price is not an heir and Brice Steele is nowhere stated to be one. *Offutt v. Offutt* (3 B. Monroe, 162), favors this conclusion, and it conforms to the practice as understood in the English Courts of Probate, in establishing wills of personalty, without regard to the question of their sufficiency as wills of the realty."

The case of *Davis v. Sigourney,* 8 Metc. 487 (1844) is sometimes cited as supporting the contention that the contents of a lost will must be proved, in their entirety, but the same court in *Tarbell v. Forbes,* 177 Mass. 243, said that that case did not establish that rule, and it there stated what it regarded as the true rule in this language: "Where a will is proved by oral testimony, it cannot be expected that any witness can testify to the exact words used, but what is required is the substance of its material provisions, their true tenor and effect. *Foster v. Foster.* 1 Adams Eccl. 462, 468; *Wyckoff v. Wyckoff,* 16 N. J. Eq. 401, 406; *Jackson v. Jackson,* 4 Mo. 210; *Dickey v. Malechi,* 6 Mo. 177, 184; *Allison v. Allison,* 7 Dana, 90; *Skeggs v. Horton,* 82 Ala. 362; *Jones v. Casler,* 139 Ind. 382; *Anderson v. Irwin,* 101 Ill. 415. See also *Sugden v. St. Leonards,* 1 P. D. 154, 222, 232, 235. * * * The law may well be, as stated by a recent writer on the laws of wills, 'that any substantial provision of a lost will, which is complete in itself and independent of the others, may, when proved, be admitted to probate, though other provisions cannot be proved, if the

validity and operation of the part which is proved are not affected by those parts which cannot be proved.' 1 *Underhill on Wills,* par. 278."

Coming to the cases decided since *Rhodes v. Vinson,* the best-considered decisions appear to support the rule that where the substantial contents of a lost will are proved, even though it appears that the will contained minor and relatively unimportant items which cannot be shown, that it may be admitted to probate. The objection to this rule is stated and contradicted by Jessel, M. R., in the leading case of *Sugden v. St. Leonards,* 1 Prob. Div. 233, where he says: "The argument as to the personal estate was this: It was said, if it is proved to your satisfaction that legacies are omitted, then, by granting probate of the will which disposes of the residue, you are giving a larger proportion of the personal estate to the residuary legatees than was intended for them by the testator, and in so granting probate you are not only not performing the intention, but you are acting contrary to the intention, of the testator. This argument appears to me to be fallacious—it turns on the use made of the word 'intention.' It seems to me that the testator may be said to have in this respect two intentions—he has a primary intention that the legatee, whether general or specific, shall take the legacy—he has a secondary intention that, if by any reason whatever that legacy cannot take effect, then it is to go, not to his next of kin, but to his residuary legatees. It may well be that we are not able to give effect to the primary intention, but we certainly are able to give effect to the secondary intention; and I see no reason why we should not give effect to the secondary intention because the circumstances which have happened have made it impossible to carry out the primary one to the extent of the legacies, the amount of which, and the names of the legatees of which, we do not know."

While this court is unwilling to go as far as the court did in *Sugden v. St. Leonards* and such American cases as *Skeggs v. Horton,* 82 Ala. 352, in admitting to probate parts

of a will where it appears that material parts of it are missing, it is also unwilling to defeat the intention of the testator by refusing to probate a will, which is perfect and complete with the exception of minor and relatively unimportant items, which do not affect the substantial purpose and intention of the testator.

Applying these principles to the facts before us, in our opinion, sufficient of the contents of the will of 1919 were proved or offered to be proved to have warranted its probate. The only part of it which the draftsman, according to the offer, failed to recall were "one or two legacies of personal chattels" of comparatively small value, and which it may be inferred from declarations of the testatrix which the appellant offered to prove was a violin which she left to a Mr. Vail. Certainly, her will, disposing of practically her entire estate, in accordance with her settled and deliberate intention, ought not to be defeated for so trifling and unimportant an omission.

Taking up *seriatim* the several exceptions submitted by the record: The first exception relates to the court's refusal to admit in evidence the supposed will and codicil of November, 1919, in connection with an offer to show that when it was made the testatrix was mentally capable of making a valid contract, but that when the wills and codicil of November, 1923, were made, she was not. The only issue in the case involved the hypothesis that the will of 1919 was valid, and that the will and codicil of November, 1923, were void, and it was therefore essential that both papers be produced before the jury (*Townshend v. Townshend,* 7 Gill, 27), since the caveator's right to contest the will and codicil of November, 1923, depended first upon the validity of the 1919 will, and second upon the fact that it had not been revoked by the will and codicil of November, 1923, because they were invalid and could not amount to a revocation. The evidence involved in this exception should therefore have been admitted, and there was error in excluding it. The second, third and eighteenth exceptions relate to the court's refusal

to permit appellant to show the circumstances surrounding his delivery of the will of 1919 to Mrs. Moore in 1923. Since one of the issues of fact in the case was whether Mrs. Moore had ever revoked that will, it was proper to show what she said and did with respect to it, at or about the time she is said to have revoked it by making a later will, and this evidence should have been admitted. The fourth and fifth exceptions relate to the court's refusal to permit the appellant to prove the contents of the 1919 will with the exception of one or two legacies of personal chattels or articles of furniture of small value. From what has already been said, there was error in these rulings, since if the will was susceptible of probate the jury were entitled to know what it was.

Exceptions six, eight, nine and ten relate to the exclusion of evidence showing the relations between Mrs. Moore and the appellant, and exceptions seven, eleven, thirteen, fourteen and fifteen to the exclusion of certain declarations made by her indicating her affection for the appellant, her intention to leave her property to him, acknowledging her execution of the will of 1919, and showing her knowledge of its contents. There having been in our judgment sufficient evidence of the existence and execution of the will of 1919 to warrant the submission of those questions to the jury, for the reasons stated in *Hoppe v. Byers,* 60 Md. 393, this evidence should also have been admitted. For while, as stated in that case, in the absence of other and independent evidence sufficient in itself to show the existence and execution of the will, the relations between the testatrix and the appellant, and her declarations as to the manner in which she would dispose of her estate or of how she had disposed of it, would not be sufficient to show either the existence or the execution of the will, nevertheless when there is such other independent evidence sufficient to show those facts in the case, such evidence is admissible to corroborate it. *Clark v. Turner,* 50 Neb. 290, 38 L. R. A. 453, and cases there cited.

The sixteenth and seventeenth exceptions relate to the rulings of the court in refusing to permit the appellant to show the circumstances surrounding the execution of the will of September, 1923, and in refusing to admit that will in evidence. Mrs. Moore's mental and physical condition at that time, her ability to speak or signify her wishes or intentions, her relations with the parties who benefited by that will, her dependence and reliance upon them, their influence over her, were all matters which the jury would want to consider in determining whether the will of November, 1923, was a valid revocation of the will of 1919, if they believed such a will had been validly executed. And the circumstances surrounding the execution in September, 1923, of a will alike in its principal provisions to that as well as the codicil thereto were undoubtedly relevant and material as reflecting upon those questions, and there was error in excluding this testimony. Exceptions nineteen to twenty-two relate to the refusal of the court to allow evidence offered to show that when the testator destroyed the will of 1919, and when she executed the will and codicil of November, 1923, she was of unsound mind and incapable of executing a valid deed or contract, but that when she executed the will of 1919 she was capable of executing a valid deed or contract. Since in our judgment there was evidence legally sufficient to have warranted the submission of the existence, execution and revocation of the will of 1919 to a jury, and since no other objection could have been properly urged to the proffered evidence, it follows that the rulings involved in these exceptions were erroneous. The twelfth exception relates to the court's refusal to allow the introduction in evidence of certain letters written by Mrs. Moore to the appellant and his wife. Since this case must be tried again, we will not refer to the contents of those letters, further than to say that they tended to show a fixed intention on the part of Mrs. Moore to leave her property to the appellant, and should have been admitted for the same purpose, and subject

to the same limitations as to their weight and effect (as stated above), as any other declarations of the testatrix.

At the conclusion of the caveator's case, the court granted a prayer offered by the defendants, which instructed the jury to find their verdict for the caveatees. That ruling is the subject of the twenty-third exception. Strictly speaking, there was no evidence given by witnesses sworn in the case legally sufficient to entitle the plaintiff to recover. But that was because the caveator had not been permitted to prove his case, for if, to the evidence actually given there had been added the evidence contained in the offers which should have been admitted, the truth of which was conceded by the prayer, and by the objections and rulings of the court in reference thereto, there would, for the reasons given above, have been evidence legally sufficient to have taken the case to the jury.

In view of the fact that this case must be retried, we have deemed it proper to discuss the exceptions severally, although it is obvious that the rulings embodied in them were all based upon the view which the careful and learned judge who tried the case below took of the two propositions stated at the outset of this opinion, which view was, for the reasons stated by us in our opinion, erroneous.

It follows, therefore, that all the rulings appealed from will be reversed and the case remanded for further proceedings.

*Rulings reversed and procedendo awarded.*