WEBSTER C. TALL ET AL. *v.* EMIL BUDNITZ, ADMINISTRATOR, ET AL.

[No. 33, January Term, 1932.]

*Decided April 4th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Ogle Marbury,* for the appellants.

*J. Cookman Boyd, Jr.,* with whom were *Boyd & Boyd* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The appeal in this cause is from the unanimous judgment of the Orphans' Court of Baltimore City, which, after a trial of the issues submitting the questions in controversy, determined that Webster I. Bians had died in Baltimore City on June 10th, 1931, leaving a last will and testament which he had duly executed in January, 1910, with full knowledge and comprehension of its contents, without undue influence, and when he had the requisite testamentary capacity, and that this unrevoked will was, without the authorization or intention of the testator, inadvertently destroyed by the draftsman while the will was in his custody, but that this destruction was not known or discovered until after the testator's death, and, finally, that the form and contents of the will and the subscription of the testator and the attesting

witnesses had been ascertained by parol testimony, and, as so established and found, it should be, and was, admitted to probate.

At the time of his death, the estate of the decedent consisted of the house at 421 South Hanover Street, in Baltimore, in which he and his wife had lived, and personalty to the value of about $1,800. He was survived by his widow, and had no descendants. His sole heirs at law and next of kin were Webster C. Tall and Charles Grant Tall, his two nephews. In the event of an intestacy, the widow would have taken one moiety of his real and personal estate, and his two nephews the other moiety.

On July 27th, 1931, the widow was granted letters of administration on her husband's estate; and, on September 23rd, 1931, she died suddenly without completing her administration. Letters of administration on the estate of the widow, Virginia (Jennie) J. Bians, were granted to Emil J. Budnitz, who, as such administrator, filed on September 29th, 1931, in the Orphans' Court of Baltimore City, a petition averring that Webster I. Bians had, in fact, died testate, but that the will had unintentionally been destroyed by the custodian of the instrument; that its form and contents were of a given tenor which made the wife of the testator his sole legatee and devisee, and his executor without bond, except as made indispensable by law; and that, although the widow had taken out letters of administration upon her husband's estate shortly after his death, she, before her death, had, upon being advised that she was entitled to have the destroyed will of her husband established and admitted to probate, employed counsel and had him prepare a petition for that purpose, but that her sudden death had prevented an institution by her of the proceedings. The nephews of the alleged testator were cited to show cause why the purporting will should not be admitted to probate. The answer of the nephews denied the uncle had died testate, and requested the cause be heard on issues which would present the facts in controversy.

Letters of administration *de bonis non* have been granted

on the estate of Webster I. Bians to the nephew Webster C. Tall, and the next of kin and only heir at law of Virginia J. Bians is her father. The Proceedings ultimately united the administrator and the father of Virginia J. Bians as the proponents of the alleged destroyed testamentary paper, and the two nephews of Webster I. Bians and his administrator *de bonis non* as its opponents, with the questions of fact for determination by the Orphans' Court of Baltimore City presented in the six issues proposed in the answer of the nephews. It is not contended on brief, and there is no testimony on the record, that the decedent did not possess the requisite testamentary capacity; or that the contents of the document in question were not known and understood by him at the time of its subscription; or that its execution was procured by fraud, undue influence, or was later revoked. These issues therefore require no further consideration. The remaining questions must be determined by principles which have been clarified and declared in an exhaustive opinion by Judge Offutt in the comparatively recent case of *Preston v. Preston,* 149 Md. 498, 132 A. 55. It is settled law that the execution and contents of an unrevoked will, which has been lost or destroyed after the testator's death but before probate, may be proved by parol evidence, if clear and convincing. *Ibid.* pp. 508-518. *In Bonis Barber,* 1 P. & D. 267; *Burls v. Burls,* 1 P. & D. 472; *In Bonis Leigh* (1892) Prob. 82; *Haines v. Haines,* 2 Vern. 441; 1 *Williams on Executors,* 319, 320.

The evidence may now be examined and considered to determine if the parol testimony possesses the requisite clarity and cogency. The present record carries no selfish nor sinister implications. The testator and his wife were a childless couple and members of the Christ Lutheran Church, whose congregation had been organized by the Reverend Leander Zimmerman, a Lutheran clergyman, who remained its pastor for thirty-five years, when, on account of illness, he was obliged to resign his charge in April, 1925. For more than seventeen years before his resignation, Doctor Zimmerman had an apartment in the Bians home and lived there on terms

of intimate friendship. While this relation continued the husband requested his pastor to write his will. This was done, but the will was accidentally destroyed, and the testator and his wife are dead, and only the clergyman, who wrote the will and witnessed its execution, and a second subscribing witness, are alive to testify to what occurred. These witnesses were called, and they are not only credible but wholly disinterested, and there is nothing in their testimony or the circumstances to impeach their evidence. There are, of course, minor discrepancies in recollection of details, as is natural because of the difference in the responsibility and importance of the actors in the preparation and execution of the instrument, and in their vividness of impression and their relative power of recollection after an interval of over twenty years.

1. Dr. Zimmerman was asked by the testator to write the will and attend to its execution after the testator had instructed him in reference to its provisions. Obviously and necessarily he is the single living witness who knew what actually occurred. By reason of the frequent requests made of him to write wills, he carried with him a skeleton form which indicated the requisites of a valid instrument and illustrated how they should be expressed. Because of this circumstance, and his recollection of the simple and clear directions received and their incorporation in the paper writing prepared by him, the draftsman is able to reconstruct the document in every substantial detail. It is not necessary to embody here the complete instrument as remembered by Dr. Zimmerman, whose veracity and competency are unimpeached, but it is sufficient to state that by the will all the testator's real and personal property was given and devised to his wife absolutely, and that she was appointed the executrix without bond. *Supra.*

2. The testimony of Dr. Zimmerman is that he recollects distinctly that, after the will had been written by him, the witnesses were sent for by Mr. Bians, who signed the will in the presence of the two witnesses Denny and Zimmerman and a third witness whom Zimmerman cannot recall, and

then all three witnesses signed their names as witnesses to the will in the presence of the testator and of one another.

John F. Denny, who was a friend of the testator and well known to Dr. Zimmerman, and who was identified by Dr. Zimmerman as one of the subscribing witnesses, testified that he was called to the home of the testator to witness his will, and that he signed the paper as they requested. He recalls seeing the testator and Dr. Zimmerman, but does not mention the presence of a third witness, nor can he recall seeing either the testator or either of the other witnesses sign the document in question.

The only attempt at the identification of the third witness is through the testimony given by Henry D. Sauerhoff, the aged father of the wife of the testator, who lived with his daughter and her husband. Sauerhoff testified that he heard his son-in-law talking about the making of a will, and was asked by him to get somebody for a witness, and that Sauerhoff got a Mr. Seymour, who came, was let in the house by Sauerhoff, and went upstairs where they wanted to see him.

While the petition to have the lost or destroyed will admitted to probate alleges that a Charles Seymour was the third witness to the will, and that he is now dead, the allegations cannot be considered, as they are denied by the respondents. So the testimony of Sauerhoff is insufficient to establish that Seymour was a witness to the will, and has but little value. Only Seymour's surname is mentioned in the proof, and neither the time nor other circumstance is furnished to identify him as the unnamed third witness of Zimmerman's testimony.

Two attesting witnesses to the will are sufficient, and the inability of Zimmerman and Denny to recall the name of the superfluous third witness, after passage of twenty years, does not destroy their credibility nor discredit their testimony in reference to recollected acts. The witnesses Zimmerman and Denny were disinterested, were not contradicted, and gave no indication of bias or preference. Their respective narratives were clear, consistent and definite within their scope, and the terms of the executed will were not inconsistent with a prob-

able testamentary disposition. In short, the execution of the will in conformity with the statutory requirements is here established by clear and convincing proof. *Preston v. Preston,* 149 Md. 508-512, 132 A. 55; *Wigmore on Evidence* (2nd Ed.), secs. 2034, 2052; Code, art. 93, sec. 332; *Woodstock College v. Hankey,* 129 Md. 679, 99 A. 962; *Sellers v. Hayden,* 154 Md. 117, 140 A. 56.

3. The will was placed in an unmarked envelope, and delivered by the testator to Dr. Zimmerman for safe-keeping, and was kept in a small safe in Dr. Zimmerman's room until his resignation as pastor and removal to Washington in April, 1925. When this occurred, the custodian obtained a deposit box in a Baltimore bank, where he put four sealed envelopes containing four wills, with the name of the particular testator written on the envelope for the purpose of identification. After the death of Bians, Dr. Zimmerman went to the bank, took out the envelope bearing the name of Bians, and delivered it to the widow, who opened the envelope and found that it did not inclose the will of her husband, but contained the will which Dr. Zimmerman had written for another party and which he believed had been destroyed. The explanation offered by Dr. Zimmerman is that he had wrongly marked the envelopes and that this mistake had caused him unintentionally to destroy the Bians will when he had intended and believed that, in destroying the other envelope and its enclosure, he was destroying the will which was actually inside of the envelope bearing the Bians name.

Whether this is what happened is not important, because the evidence is that Bians never requested nor obtained possession of the will, which remained unrevoked in the custody of the pastor, who, through his neglect, has either lost or destroyed the original paper.

On this record the court is of the opinion that the order from which this appeal is taken should be affirmed.

> *Order of the Orphans' Court of Baltimore City affirmed, with costs to be paid by Webster C. Tall and Grant Tall, appellants.*